No. 2--08--0134     Filed: 8-19-08

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| RONALD McELROY, SR., and SUSAN McELROY, | ) ) ) | Appeal from the Circuit Court of Lake County. |
| Plaintiffs-Appellees, | ) ) | |
| v. | ) ) | No. 04--L--892 |
| THE FOREST PRESERVE DISTRICT OF LAKE COUNTY, | ) ) ) | Honorable Christopher C. Starck, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE BOWMAN delivered the opinion of the court:

In this appeal, we are asked to answer the following certified questions:

(1) "Whether the immunity of section 3--107(b) of the Tort Immunity Act (745 ILCS 10/3--07(b)) applies to so-called 'manmade objects,' such as a wooden bridge or boardwalk which is part of a recreational hiking and riding trail"; and

(2) "Whether the common law 'frequent trespass doctrine' creates an exception to or limitation upon the non-intended user immunity of section 3--102(a) of the Tort Immunity Act (745 ILCS 10/3--102(a)), which limits a local public entity's duty to maintain its property to those persons whom the entity both intended and permitted to use the property."

We answer the first question in the affirmative as it applies to this case, and we do not reach the second question.

I.  BACKGROUND

Plaintiffs, Ronald McElroy, Sr., and Susan McElroy, alleged the following in their complaint. On the afternoon of September 6, 2004, they rode their bicycles in the Rollins Savanna Forest Preserve, which was owned, operated, and maintained by defendant, the Forest Preserve District of Lake County.  The complaint quoted from defendant's Web site a description of the preserve, which contained 1,225 acres and a " '5½-mile trail with bridges and boardwalks.' "  The description further stated that " '[t]his multiuse trail is open for hiking, bicycling, cross-country skiing and nature and wildlife observation.' "  On the day of their ride, plaintiffs followed a marked gravel bike path that led to an elevated wooden bridge.  The bike trail and bridge had many bike tire marks and footprints that were left by pedestrians and bicyclists.  Ronald "rode his bicycle onto the bridge in question by traveling up a wooden ramp that connected the gravel bike trail to the elevated bridge."  He was injured when his bicycle dropped off the western portion of the bridge, which did not have a "ramp connecting [it] to the ongoing westbound bike trail."  Plaintiffs alleged that there were no signs or barricades prohibiting people from using the bridge or warning of the drop-off.

In his deposition, Ronald testified that September 6, 2004, was the first time he had been to the Rollins Savanna Forest Preserve.  Ronald had never visited defendant's Internet site, and he had never seen newspaper articles or mailings stating that the preserve had a grand reopening scheduled for September 18, 2004.  He had previously driven by the preserve in 2004 and noticed two buildings being constructed near the preserve's entrance on Atkinson Road.

On the day Ronald was injured, plaintiffs entered the forest preserve through the Atkinson Road entrance.  The entrance had two gates, but the gates were open, and plaintiffs traveled west on the bike path.  Plaintiffs had decided to enter the preserve because they were interested in taking a

scenic ride and seeing the nature in the preserve. Ronald did not recall seeing any signs near the preserve's entrance or on the bike path. He crossed one bridge without incident. Near the bridge where Ronald fell, he remembered seeing orange fencing to the left of the trail, but he did not recall seeing any fencing crossing the trail. He did not tear down or ride over any fences. The bridge at issue was raised from the path and was about as wide as the path leading to it. The trail led directly to the bridge, and no part of the trail went around it. Ronald rode up a ramp on the east end of the bridge, and he did not realize that there was no ramp on the west end of the bridge until he was about four to six feet from the end. He fell forward off the bridge.

Susan provided the following testimony in her deposition. She had never been in the Rollins Savanna Forest Preserve before the date of the accident, and she had never visited defendant's Internet site. Susan had also never read any articles about ongoing construction at the preserve. The only work she had previously observed on the preserve was the construction of a building. On September 6, 2004, the gates were open at the Atkinson Road entrance, and she did not see any signs there or in the preserve. When plaintiffs approached the bridge in question, Susan was riding behind Ronald. There was no orange fencing on the east end of the bridge. There was orange fencing on the trail at the west end of the bridge, beyond the drop-off, but it was torn down.

According to an affidavit of defendant's marketing coordinator, Catherine Savage, the information in plaintiffs' complaint from defendant's Internet site was not posted until September 20, 2004, about two weeks after the accident. On and before September 6, 2004, the preserve was closed to the public while defendant completed a large improvement and restoration project. Savage had updated the Internet site at various times before September 6, 2004, to reflect the ongoing construction work. Defendant had issued a news release that work on the preserve's new trail system

and public access areas would begin on July 7, 2003, and that the preserve would be closed to the public during construction. Defendant had also sent mailings to some Lake County residents informing them of the preserve's reopening on September 18, 2004.

Defendant additionally submitted an affidavit of Greg Walenter, who was employed by defendant as a landscape architect. Walenter was the project manager for the preserve's construction project. He averred that the preserve was closed to the public beginning in July 2003 and was reopened on September 18, 2004. In order to advise the public that the preserve was closed, Walenter had personally posted signs at each of the preserve's four access points. He had placed two signs at the Atkinson Road entrance, including one in the center of the driveway to the parking area. That sign was about 12 inches by 12 inches, orange with black lettering, and read "CONSTRUCTION AREA-NO TRESPASSING." The signs remained in place until Walenter personally removed them one or two days before the September 18, 2004, grand reopening.

In his deposition, Walenter testified that before 2003 the preserve consisted of a mowed turf parking lot and a mowed trail. In 2003, defendant began improvements on the property. There were no construction workers present on September 6, 2004, because it was Labor Day. The gate at the Atkinson Road entrance should have been closed, but Walenter did not personally know whether the gate was open or closed that day. The trail contained raised wooden bridges over wetland areas where stone trails could not be built. The bridge at issue was built in summer 2003, but it was damaged at one end from flooding that occurred over the winter of 2003 to the spring of 2004. The bridge was not immediately fixed because there was a dispute between government agencies over who would pay for the repairs. An orange construction fence or "snow fence" was erected around the entire bridge in late spring to early summer 2004. There were no other construction fences

installed in the preserve on the day of the accident. On more than one occasion between summer 2004 and the reopening of the park, Walenter had observed that the portions of the fence that went across the trail had been knocked down. He had personally retied the fence at least one time. The bridge was ultimately fixed in summer 2005. It was intended for recreational activities such as walking and biking.

Plaintiffs filed their four-count complaint on November 4, 2004. Counts I and II pertained to Ronald and alleged negligence and willful and wanton misconduct. Counts III and IV pertained to Susan and alleged loss of consortium due to negligence and willful and wanton misconduct. The trial court granted defendant's motions to dismiss counts I and III, alleging negligence. Defendant thereafter moved for summary judgment on the remaining counts under sections 3--102(a) and 3--107(b) of the Local Governmental and Governmental Employees Tort Immunity Act (Tort Immunity Act) (745 ILCS 10/3--102(a), 3--107(b) (West 2004)), and the trial court denied the motions. It ruled that section 3--107(b) did not apply because the bridge was not a trail and that questions of fact precluded summary judgment under section 3--102(a).

On February 4, 2008, the trial court entered an agreed order certifying the two previously quoted questions for appeal. On March 17, this court granted defendant's application for leave to appeal under Supreme Court Rule 308 (155 Ill. 2d R. 308).

## II. ANALYSIS

We begin by setting forth the applicable statutes. Section 3--107 of the Tort Immunity Act states:

"Neither a local public entity nor a public employee is liable for an <u>injury caused by a condition of</u>: (a) Any road which provides access to fishing, hunting, or primitive camping,

recreational, or scenic areas and which is not a (1) city, town or village street, (2) county, state or federal highway or (3) a township or other road district highway. (b) <u>Any hiking, riding, fishing or hunting trail</u>." (Emphasis added.) 745 ILCS 10/3--107 (West 2004).

Section 3--102(a) of the Tort Immunity Act states:

"Except as otherwise provided in this Article, a local public entity has the duty to exercise ordinary care to maintain its property in a reasonably safe condition <u>for the use in the exercise of ordinary care of people whom the entity intended and permitted to use the property</u> in a manner in which and at such times as it was reasonably foreseeable that it would be used, and shall not be liable for injury unless it is proven that it has actual or constructive notice of the existence of such a condition that is not reasonably safe in reasonably adequate time prior to an injury to have taken measures to remedy or protect against such condition." (Emphasis added.) 745 ILCS 10/3--102(a) (West 2004).

The first certified question requires us to interpret section 3--107(b) and determine whether the wooden bridge from which Ronald fell was part of a "hiking" or "riding" "trail," which would provide defendant immunity from liability. The fundamental rule of statutory construction is to ascertain and give effect to the legislature's intent, with the best indication of that intent being the plain and ordinary meaning of the statute's language. <u>Wisniewski v. Kownacki</u>, 221 Ill. 2d 453, 460 (2006). If a statute within the Tort Immunity Act contains an ambiguity, we will strictly construe the statute against the public entity because its immunities are in derogation of the common law. <u>Scott v. Rockford Park District</u>, 263 Ill. App. 3d 853, 857 (1994). The construction of a statute is a question of law, which we review <u>de novo</u>. <u>In re Marriage of Best</u>, 228 Ill. 2d 107, 116 (2008).

Further, we review de novo legal questions presented in an interlocutory appeal. Applebaum v. Rush University Medical Center, 376 Ill. App. 3d 993, 995 (2007).

Plaintiffs cite Goodwin v. Carbondale Park District, 268 Ill. App. 3d 489, 493 (1994), where the appellate court reasoned that the language of section 3--107 as a whole indicates that the legislature gave governmental entities absolute immunity from injuries sustained on "unimproved" hiking, riding, fishing, and hunting trails in undeveloped recreational areas, because of the time and money governmental entities would need to maintain such properties in a safe condition. The Goodwin court further reasoned that requiring a certain level of maintenance would defeat the purpose of these types of recreational areas, which is to enjoy activities in a natural setting. Goodwin, 268 Ill. App. 3d at 493. The court held that a paved bike path in a developed city park was not a "riding trial" within the scope of section 3--107(b). Goodwin, 268 Ill. App. 3d at 493-94.

We disagree with Goodwin's contention that a trail must be "unimproved" in order to fall under section 3--107(b). Where a statute is unambiguous, we must give effect to its plain meaning without reading into it exceptions, limitations, or conditions that the legislature did not express. Van Milligen v. Department of Employment Security, 373 Ill. App. 3d 532, 538 (2007). In this case, section 3--107(b) excepts certain "trails" and does not require that they be strictly "unimproved" trails. The plain and ordinary meaning of the word "trail" is a " 'marked path through a forest or mountainous region.' " Mull v. Kane County Forest Preserve District, 337 Ill. App. 3d 589, 591-92 (2003), quoting Webster's Third New International Dictionary 2423 (1993). As defendant points out, rarely if ever is a "riding trail" found in nature without any improvements to make the trail accessible and safe to the public. A "trail" has been held to include a gravel and limestone path used as a riding trail (Mull, 337 Ill. App. 3d at 591-92) as well as a paved path used as a riding trail (Brown v. Cook

County Forest Preserve, 284 Ill. App. 3d 1098, 1101 (1996)). Both of these types of trails are arguably "improved" trails. Mull and Brown distinguished Goodwin on the basis that the trail in Goodwin ran through a developed city park, whereas the trails in Mull and Brown were in wooded or undeveloped land. Mull, 337 Ill. App. 3d at 592; Brown, 284 Ill. App. 3d at 1101. Similarly, in this case plaintiffs do not dispute that defendant would be immune from liability for injury caused by a condition of the gravel portions of the trail, which were in a natural area and were to be used for hiking and riding. The more specific question contested is whether a manmade bridge is considered part of a riding trail under section 3--107(b).

Preliminarily, defendant argues that section 3--107(b) does not contain an exception for unnatural or manmade conditions of a riding trial. Defendant cites Brown, where the plaintiff fell off his bicycle and hit his head on a guardrail that served as a barrier to vehicular traffic using a road that ran alongside part of a paved bicycle path. Brown, 284 Ill. App. 3d at 1099. The plaintiff alleged that defendant had willfully and wantonly designed the slope of the path and placed it alongside the barrier. Brown, 284 Ill. App. 3d at 1099. The plaintiff argued that section 3--107(b) did not apply because his injuries were caused by the placement of an artificial barrier, and he cited Sites v. Cook County Forest Preserve District, 257 Ill. App. 3d 807, 811 (1994), in which the court held that there was no tort immunity under section 3--107(a) where a bicyclist was injured after riding into a cable gate that had been strung across an access road. Brown, 284 Ill. App. 3d at 1101-02. In rejecting this argument, Brown distinguished Sites on the basis that the guardrail was not on or across the trail itself, as was the cable gate in Sites, and that the plaintiff did not allege that the guardrail caused his fall.[1] Brown, 284 Ill. App. 3d at 1102. The Brown court also stated:

_____

[1]We further note that Sites appears to be at odds with Kirnbauer v. Cook County Forest

"To create a general exception to tort immunity for all cases involving an unnatural or man-made structure would have the undesirable effect of discouraging public entities such as the Forest Preserve from undertaking improvements to scenic trials, particularly the placement of signs, fences and barriers such as guardrails, which are erected, in large part, for the protection of the public. More importantly, we see nothing in the language of the Act that would warrant creating such a broad exception." Brown, 284 Ill. App. 3d at 1102.

We agree with Brown that section 3--107(b) does not universally exclude from immunity all cases involving manmade structures.

The issue of bridge immunity was touched upon but not resolved in Scott, 263 Ill. App. 3d 853, another case cited by defendant. There, a boy was riding across a bridge when his bicycle hit a crack, and he was thrown over the side of the bridge. The bridge connected to a paved pathway in a park. Scott, 263 Ill. App. 3d at 854. While the court held that the defendant was immune from liability under section 3--107(a) because the bridge was an access road to a recreational area, it also held that the plaintiffs had waived the question of whether the bridge was covered by section 3--107(a)'s phrase, "road which provides access," because they had failed to raise the issue in the trial court. Scott, 263 Ill. App. 3d at 857. In contrast to Scott, here plaintiffs directly contest the applicability of section 3--107(b) to a bridge.

---

Preserve, 215 Ill. App. 3d 1013 (1991), a case not mentioned in the Sites decision. In Kirnbauer, the court held that a steel cable with a "closed" sign, strung across a road or trail leading to a forest preserve, was a condition of an access road or a hiking or fishing trail under section 3--107, providing the defendant with immunity. Kirnbauer, 215 Ill. App. 3d at 1023-24. However, we need not resolve this conflict for purposes of this appeal.

Defendant argues that, just as highways include bridges over rivers, the wooden bridge in the forest preserve was an integral part of the hiking and biking trail that allowed the trail to cross over a wetland area. Defendant maintains that regardless of whether a trail surface is crushed gravel, asphalt, or wooden planks, section 3--107(b) applies to multiuse trails, immunizing it from liability for any condition of the trail.

We agree with defendant's argument. As stated, the plain and ordinary meaning of "trail" is a " 'marked path through a forest or mountainous region.' " Mull, 337 Ill. App. 3d at 591-92, quoting Webster's Third New International Dictionary 2423 (1993). Such natural areas often include rivers, streams, and wetlands, and bridges serve as integral parts of the trail to allow people to traverse such areas and enjoy the scenery and wildlife. Here, it is undisputed that the preserve's trail was built for bicycle riders and hikers, among others. It is also undisputed that the gravel portion of the trail led directly to the bridge and continued at the end of the bridge, with no option of going around the bridge. Thus, the bridge connected the gravel portions of the trail and was an integral part of the trail itself, allowing passage over a wetland area. In other words, the trail itself did not stop and start at the bridge but, rather, the bridge was a continuation of the trail. Ronald's injury was allegedly caused by the defective condition of the bridge, which had been damaged due to flooding and had not yet been repaired. Accordingly, section 3--107(b) immunity for "an injury caused by a condition of" a hiking or riding trail applies.

Plaintiffs argue that, if trail immunity applies to a bridge, it could also apply to a hypothetical scenario in which a trail leads into and out of a building that lacks a floor due to ongoing construction. We agree with defendant that this scenario is neither realistic nor helpful in resolving this case, as it is contrary to common experience for a hiking or riding trail to run directly through

a building. In contrast, as discussed, bridges are commonly found on hiking and riding trails to allow for passage over rivers, streams, and wetlands, which are often part of the natural surroundings that trail users seek to enjoy. Thus, the hypothetical scenario that plaintiffs suggest bears little resemblance to the facts of this case.

In the trial court, defendant offered section 3--107(b) and section 3--102(a) as alternative bases for immunity. Based on our conclusion that section 3--107(b) immunity applies to the bridge at issue in this case, we need not address the second certified question.

### III. CONCLUSION

For the foregoing reasons, we answer the first certified question in the affirmative, limiting our holding to the facts of this case. We do not reach the second question.

Certified question answered; cause remanded.

ZENOFF, P.J., and BURKE, J., concur.