# Illinois Official Reports

## Appellate Court

---

### *Corbett v. County of Lake*, 2016 IL App (2d) 160035

---

| | |
|---|---|
| Appellate Court Caption | KATHY CORBETT, Plaintiff-Appellant, v. THE COUNTY OF LAKE and THE CITY OF HIGHLAND PARK, Defendants (The City of Highland Park, Defendant-Appellee). |
| District & No. | Second District<br>Docket No. 2-16-0035 |
| Filed | September 23, 2016 |
| Decision Under Review | Appeal from the Circuit Court of Lake County, No. 14-L-493; the Hon. Christopher C. Starck, Judge, presiding. |
| Judgment | Affirmed in part and reversed in part; cause remanded. |
| Counsel on Appeal | Peter F. Higgins, of Lipkin & Higgins, of Chicago, for appellant.<br><br>Michael G. Nerheim, State's Attorney, of Waukegan (Janelle K. Christensen and Kevin J. Berrill, Assistant State's Attorneys, of counsel), for appellee. |
| Panel | PRESIDING JUSTICE SCHOSTOK delivered the judgment of the court, with opinion.<br>Justices Hutchinson and Burke concurred in the judgment and opinion. |

¶ 1      Plaintiff, Kathy Corbett, was seriously injured while riding her bicycle on the Old Skokie Bike Path in Lake County. She filed this action against defendants, the County of Lake (County) and the City of Highland Park (City), alleging that they were liable for defects in the path that caused her accident. The trial court granted both defendants summary judgment (735 ILCS 5/2-1005(c) (West 2014)), based on the Local Governmental and Governmental Employees Tort Immunity Act (Act) (745 ILCS 10/1-101 *et seq.* (West 2012)). Plaintiff appeals only the judgment in favor of the City, arguing that the trial court erred in holding that the City was immune from liability because, as a matter of law, the bicycle path was a "riding trail" within the meaning of section 3-107(b) of the Act (745 ILCS 10/3-107(b) (West 2012)). We reverse the judgment in favor of the City, and we remand.

¶ 2      We summarize the facts pertinent to this appeal. Plaintiff's complaint alleged as follows. On August 21, 2013, and at all other pertinent times, defendants controlled and maintained that part of the path within Highland Park and specifically the section of the path running parallel to Skokie Valley Road (U.S. Route 41) in between the intersections with Old Deerfield Road and Park Avenue West. By agreement with the County, the City was responsible for routine maintenance of the path, including repairing the pavement. Before August 21, 2013, defendants were on notice that weeds and other vegetation were growing through the asphalt, making portions of the path broken, bumpy, and elevated. Defendants were willfully and wantonly indifferent to the danger. On August 21, 2013, plaintiff, part of a group of cyclists riding together, rode her bicycle over a defective area and was thrown off. She hit the ground and was severely injured.

¶ 3      The City's answer raised the affirmative defense of immunity under section 3-107(b) of the Act, which reads, "Neither a local public entity nor a public employee is liable for an injury caused by a condition of *** [a]ny hiking, riding, fishing or hunting trail." 745 ILCS 10/3-107(b) (West 2012). The City later moved for summary judgment, based on section 3-107(b) of the Act. The City noted that this section provides absolute immunity, even as to willful and wanton conduct. The City then argued that, under the limited case authority that exists on the meaning of "riding trail" (which the Act does not define), the bike path was one.

¶ 4      The City's motion reasoned as follows. In *Brown v. Cook County Forest Preserve*, 284 Ill. App. 3d 1098, 1101 (1996), the First District held that the bicycle path on which the plaintiff was injured was a "riding trail," because it was commonly used by cyclists and was "designed to provide access for bicyclists to the natural and scenic wooded areas" around Saulk Lake. The court held that it made no difference that the path was paved. *Id.* In *McElroy v. Forest Preserve District*, 384 Ill. App. 3d 662 (2008), and *Mull v. Kane County Forest Preserve District*, 337 Ill. App. 3d 589 (2003), this court held that the bicycle paths at issue were riding trails per section 3-107(b). In *McElroy*, this court emphasized (according to the City's motion) that the path had been built for the use of riders and enabled them to enjoy scenery and wildlife. *McElroy*, 384 Ill. App. 3d at 669. In *Mull*, this court stressed (according to the City's motion) that, although the path ran through some developed areas, it was surrounded by wild grasses and shrubs. *Mull*, 337 Ill. App. 3d at 592.

¶ 5      Here, the City's motion argued, the depositions of plaintiff and other people established that the bike path was a "riding trail." It was intended for recreational bicycling; surrounded by shrubs, trees, and wild grasses; separated from residences and commercial businesses; and set

back from the roadway. "Most compelling," plaintiff and her fellow riders called it "the 'bunny trail' because of the bunnies that were regularly present along the route."

¶ 6    The City's motion attached several exhibits, the pertinent parts of which we summarize. In her deposition, plaintiff testified that the southern end of the part of the path at issue was the intersection with Old Deerfield Road, which has two lanes. At the intersection, there is a stop sign for bicyclists on the path but not for vehicles on the road. On August 21, 2013, plaintiff was with a group with whom she regularly rode.

¶ 7    Plaintiff testified that, just before the accident, the group was riding south toward the intersection. About one-tenth of a mile north of the stop sign at the intersection, the person two places ahead of her, Hassan Syed, hit a bump and lost control of his bicycle. Syed crashed, and his bike was turned sideways. The rider immediately in front of plaintiff was able to veer off. However, plaintiff had no place to go; she rode over Syed and his bicycle. As a result, she was thrown off her bike, rose into the air, and fell hard onto the paved surface. Plaintiff did not actually see Syed hit a bump, but he or another rider told her about it later.

¶ 8    Opposing counsel asked plaintiff whether the area of the accident was "surrounded by shrubs" and "wild grasses," whether it was "separated from residences" and "commercial businesses," and whether it was "set back from the highway." Plaintiff answered each question, "Yes." Plaintiff also testified that her accident occurred "just north of Old Deerfield Road on the bunny trail. The bike path. We call it the bunny trail because they have a lot of bunnies on it."

¶ 9    Yves Robaud, who was riding with plaintiff and the others on August 21, 2013, testified in his deposition as follows. Trees line both sides of the path. Asked whether the stretch where the accident occurred was "separated *** from residences and commercial businesses" and "set back from the highway," Robaud responded, "Yes." The accident occurred perhaps 200 yards north of the stop sign. Robaud's description of the accident was consistent with plaintiff's; he had been in between Syed and plaintiff and had seen Syed fall directly in front of him. Robaud rolled over Syed's legs and turned around to see plaintiff lying on the ground, in pain.

¶ 10    In his deposition, Syed testified consistently with plaintiff and Robaud about the accident. He stated that there were shrubs on both sides of the path. He also stated, as did plaintiff and Robaud, that the area of the path where the accident occurred was separated from residences and commercial businesses and set back from the highway. He added, "We call [the area of the path where the accident occurred] a bunny path." This was "[b]ecause there are a lot of bunnies running around there," although on the day of the accident "there was no bunny."

¶ 11    In his deposition, John Stevens, a member of plaintiff's group on the day of the accident, testified that the path was about six feet wide, paved with asphalt, and lined with some type of growth most of the way. The vegetation included hedges and bushes and a small amount of grass. As far as he knew, the path was separated from commercial businesses and any outside traffic (*i.e.*, by those other than bikers and walkers).

¶ 12    Plaintiff responded to the City's motion for summary judgment. She argued that, under the case law, the stretch of the path at issue cannot be considered a riding trail, as it runs through a developed area of Highland Park, not through a forest or a mountainous region. The path is sandwiched between U.S. Route 41 less than a block to the east and railroad tracks less than a block to the west. There are commercial buildings on both sides of the path, and many of the businesses have cyclone fences that abut the path, with industrial materials stacked up immediately behind the fences. Also, large utility poles for Commonwealth Edison, which

owns the right-of-way, line the entire length of the path, and numerous power lines are suspended overhead. The path also bypasses Buckthorn Park, which the City owns. Further, the area of the accident intersects with Old Deerfield Road, a busy city street.

¶ 13    Plaintiff's response attached her affidavit. She stated as follows. She was familiar with the bike path, including the accident scene. The path does not go through a forest or a mountainous region. Some large bushes and some grass line the path, but there are no trees in the area of the accident. The path also passes by Buckthorn Park. Large utility poles line the entire path, with multiple power lines overhead. There are areas where businesses stack materials against fences to the side of the path. At the location of the accident, business buildings butt up against the path, and several parking lots are nearby. In the area of the accident, a cyclone fence abuts the east side of the path, and the highway and the railroad tracks are less than a block from the path.

¶ 14    Plaintiff's affidavit attached photographs in support of most of her statements about the path. The first is a Google aerial photograph with "Buckthorn Park" printed adjacent to the path. The second is a shot of a bicyclist riding on the path, with utility poles and overhead wires on either side; shrubs are on one side of the path, while the other edge is mostly grass. The third shows a stretch of the path with shrubbery and a utility pole on one side, a cyclone fence with industrial pipe stacked up behind it on the other side, and utility poles in the background. The fourth photograph shows the intersection of Old Deerfield Road (which is labeled) and the path; utility poles and wires stretch across the road and line the path in the background. There are buildings a short distance to one side of the path and a parking lot a few feet from the other side. The fifth photograph is a Google aerial view labeled "1495 Old Deerfield Road"; it also identifies the path and several business establishments that are located either between the path and the railroad tracks or between the path and Old Skokie Valley Road. The sixth photograph, also from Google and labeled "1452 Old Deerfield Road," identifies that road and shows what plaintiff's affidavit identified as parking lots located a few feet to the east of the path. The seventh photograph, a Google aerial view of the general area, identifies numerous business establishments on either side of the path. The final photograph shows a sign identifying the path and a stretch of the path, including the grass borders with intermittent shrubbery and utility poles on both sides.

¶ 15    Plaintiff's response also attached the affidavit of Angus Duthie, who stated as follows. He was familiar with the path and the area of plaintiff's accident, having himself hit a bump and crashed on July 9, 2013, about 100 yards north of Old Deerfield Road. The path does not go through a mountainous or wooded region. There are some large bushes and grass but no trees in the area of his crash. In other respects, Duthie's affidavit repeated plaintiff's statements about the path and the surrounding area and attached copies of the same photographs.

¶ 16    The City filed a reply to plaintiff's response. The reply discussed the case law that both parties had cited. The City stressed that the decisions of neighboring landowners to develop their properties did not dispose of whether the path was a "riding trail"; the focus, it maintained, should be on the character of the path itself. The City thus contended that the " '[G]oogle images' " of the surrounding areas were of little evidentiary value. It did not, however, contend that they were improper or would be inadmissible as evidence.

¶ 17    The trial court granted both defendants summary judgment. It held that the County was immune under section 3-106 of the Act (745 ILCS 10/3-106 (West 2012)), which requires proof of willful and wanton conduct to impose liability on a local public entity for injury

caused by conditions of public property that is used for recreational purposes. As noted, plaintiff does not challenge this ruling. The court also held that the City was immune, based on section 3-107(b). The court did not explain its ruling. Plaintiff timely appealed.

¶ 18    On appeal, plaintiff argues that the grant of summary judgment to the City was error, because the path is not a "riding trail" (see 745 ILCS 10/3-107(b) (West 2012)) as that term has been construed by Illinois courts. Plaintiff reasons that several opinions have adopted a dictionary definition of the term, under which the path, at least in the vicinity of her accident, does not qualify as a trail. For the following reasons, we reverse the grant of summary judgment to the City and remand the cause.

¶ 19    Summary judgment is proper when the pleadings, depositions, affidavits, and other matters on file establish that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. 735 ILCS 5/2-1005(c) (West 2014). Our review is *de novo*. *People ex rel. Director of Corrections v. Booth*, 215 Ill. 2d 416, 423 (2005).

¶ 20    This appeal hinges on (1) the definition of the term "riding trail" in section 3-107(b) of the Act and (2) its application to this case. The construction of a statute is, of course, a question of law, which we review *de novo*. *Hawes v. Luhr Brothers, Inc.*, 212 Ill. 2d 93, 105 (2004). Because the Act does not define the term, our appellate courts have taken up the task. We turn to what they have said.

¶ 21    In *Goodwin v. Carbondale Park District*, 268 Ill. App. 3d 489 (1994), the plaintiff was injured when his bicycle collided with a tree that had fallen across a paved bike path that went through a city park. *Id.* at 490. The city of Carbondale owned the property and leased it to the defendant, requiring that it be used " 'exclusively for playgrounds, recreational, open space, non-autoways, and public park purposes.' " *Id.* The city also agreed to " 'construct non-autoways for the use of pedestrians, bicycles and wheelchairs on the property.' " *Id.* at 491. The plaintiff filed an action sounding in both negligence and willful and wanton conduct. The trial court dismissed his complaint, holding in part that the defendant was immune under section 3-107(b) of the Act because the path was a riding trail. *Id.* at 490.

¶ 22    The appellate court reversed the dismissal of the count alleging willful and wanton conduct, holding that "the paved bike path located in a developed city park" was not a riding trail. *Id.* at 492. The court held more broadly that section 3-107(b), which created absolute immunity, even for willful and wanton conduct, was intended to apply to "unimproved property which is not maintained by the local governmental body and which is in its natural condition with obvious hazards as a result of that natural condition." *Id.* at 493. The court continued:

> "Included in section 3-107(b) are unimproved hiking, riding, fishing or hunting trails in undeveloped recreational areas that remain in their natural condition. Absolute immunity is extended for injuries sustained on these types of property because of the burden in both time and money if the local governmental entity were required to maintain these types of property in a safe condition. Furthermore, requiring such maintenance would defeat the very purpose of these types of recreational areas, that is, the enjoyment of activities in a truly natural setting. We are reminded that the Act is in derogation of the common law and must be strictly construed against a finding of immunity." *Id.*

The court concluded that, given this reasoning, the legislature did not intend section 3-107(b) to include a paved bike path within a developed city park as a riding trail. *Id.* at 493-94.

¶ 23    In *Brown*, the appellate court affirmed a grant of summary judgment based on a holding that section 3-107(b) immunized the defendant from liability for an injury that the plaintiff suffered when he hit a bump and fell off his bicycle while riding on a bicycle path in the Saulk Trail Woods Forest Preserve. *Brown*, 284 Ill. App. 3d at 1099. The court relied on a dictionary definition of "trail" as "a 'marked path through a forest or mountainous region.' " *Id.* at 1101 (quoting Webster's Third New International Dictionary 2423 (1981)). It concluded that the bike path on which the plaintiff had been riding met this definition because, as he conceded, it was "designed to provide access for bicyclists to the natural and scenic wooded areas around Saulk Lake." *Id.* It was not consequential that the path happened to have been paved. *Id.* Also, the court was not persuaded to hold for the plaintiff merely because the path was adjacent to a highway. *Id.* at 1099.

¶ 24    The court distinguished *Goodwin*, explaining that the *Goodwin* court had stressed that the bicycle path in question had "traverse[d] developed city land." *Id.* at 1101. In *Brown*, the area in which the plaintiff was injured was, by his own description, " 'a forest,' " not the type of developed property that had been at issue in *Goodwin*. *Id.*

¶ 25    In *Mull*, this court reversed a judgment for a bicyclist who was injured when she fell while riding on a forest-preserve bicycle path. The path traversed 17 miles of the forest preserve, and the area of the plaintiff's fall was about 50 yards west of a bridge. *Mull*, 337 Ill. App. 3d at 589-90. This court adopted the dictionary definition of "trail" that *Brown* had employed. *Id.* at 591-92. We then held that the case was essentially similar to *Brown*; thus, that the bicycle path was adjacent to a road was not dispositive. *Id.* at 592. Also, that the entrance to a subdivision was near the path was not crucial: a preexisting immunity ought not be lost merely because "a neighboring landowner decide[s] to develop his property." *Id.* at 592-93. What was crucial was that the path was "surrounded by wooded or undeveloped land and [ran] through a forest preserve." *Id.* at 592.

¶ 26    Finally, there is *McElroy*, in which this court held that a path located within a 1225-acre forest preserve was a riding trail per section 3-107(b). The path was 5½ miles long, had bridges and boardwalks, and was open to hikers, bicyclists, and cross-country skiers. *McElroy*, 384 Ill. App. 3d at 663. Ronald McElroy was injured when he rode his bicycle from the gravel trail up a wooden ramp and onto an elevated wooden bridge and fell off the other end of the bridge. *Id.* This court's opinion addressed, in part, a certified question: whether the wooden bridge was part of a hiking or riding trail, per section 3-107(b). *Id.* at 666.

¶ 27    Noting that the Act is in derogation of the common law and must be construed strictly (*id.*), we nonetheless departed from *Goodwin* insofar as it held that a path must be " 'unimproved' " to qualify as a "trail" under section 3-107(b) (*id.* at 667 (quoting *Goodwin*, 268 Ill. App. 3d at 493)). We reasoned that this qualification had no basis in the plain language of the section. *Id.* Nonetheless, we endorsed the dictionary definition of "trail" that was adopted in *Brown* and then *Mull*. We explained:

> "[S]ection 3-107(b) excepts certain 'trails' and does not require that they be strictly 'unimproved' trails. The plain and ordinary meaning of the word 'trail' is a ' " 'marked path through a forest or mountainous region.' " ' [Citations.] As defendant points out, rarely if ever is a 'riding trail' found in nature without any improvements to make the trail accessible and safe to the public." *Id.*

We noted that the plaintiffs did not dispute that the gravel portions of the path were "in a natural area and were to be used for hiking and riding." *Id.* Thus, these portions, at least,

qualified as a "trail" under section 3-107(b). The contested issue was whether the manmade bridge was part of the "trail." *Id.* We held that it was. We reiterated the dictionary definition of "trail" employed in *Brown* and *Mull*. We explained that the gravel path itself was a "trail" because it went through a "natural area" (*id.* at 669), *i.e.*, a "forest" (745 ILCS 5/3-107(b) (West 2004)). We noted that forests and mountainous regions often include rivers, streams, or wetlands, making bridges necessary to enable users to enjoy these natural areas. *Id.* Thus, because the bridge was an integral part of a "trail," McElroy's injury was allegedly caused by a defective condition that was subject to section 3-107(b). *Id.*

¶ 28    We find the preceding opinions persuasive and sensible. For that reason and in the interest of *stare decisis*, we follow them insofar as they are consistent. We adhere to our statement in *McElroy* that a "trail" need not be wholly unimproved to qualify under section 3-107(b). We also adhere to the statements that a path need not be unpaved to qualify as a "trail" and that the character of a path as a "trail" is not automatically defeated by the existence of any development in the surrounding area. To this extent, we do not construe section 3-107(b) as narrowly as some have urged.

¶ 29    Nonetheless, the case law that we follow does require that, to be within section 3-107(b), a path not only be used by bicyclists (or hikers or both) but be located within a " 'forest or mountainous region' " (*Brown*, 284 Ill. App. 3d at 1101 (quoting Webster's Third New International Dictionary 2423 (1981)); see also *McElroy*, 384 Ill. App. 3d at 669; *Mull*, 337 Ill. App. 3d at 592). As a matter of law, this restriction defeats the City's assertion that the path is a riding or hiking trail. No contention has been made that the path is located in a mountainous region (mountains being scarce in Lake County). No serious contention can be made that the path is located in a forest; no reasonable person who views the photographs of the path and its surroundings, or even reads their descriptions by those who have seen them, would describe those surroundings as a forest. The path is bordered by narrow bands of greenway that sport some shrubs and a few trees; these narrow bands are surrounded by industrial development, residential neighborhoods, parking lots, railroad tracks, and major vehicular thoroughfares (to the east *and* south of the area of the accident). The case for considering the path a riding trail would not succeed even if utility poles could be considered trees with power lines for branches.

¶ 30    Although the presence of some development in the area of a path does not *per se* mean that the path is not a "trail," the presence of industrial and residential development *all around* a path negates any conclusion that it is located within a "natural and scenic wooded area[ ]" (*Brown*, 284 Ill. App. 3d at 1101) or that it is "surrounded by wooded or undeveloped land" (*Mull*, 337 Ill. App. 3d at 592). A forest preserve is a "forest," even with a moderate degree of improvement within and without. An industrial/commercial/residential area is not a forest because it contains narrow strips of green space on which a few trees stand. The location of the path in this case is wholly different from the forest preserves in *Brown*, *Mull*, and *McElroy*, which were vast areas that were for the most part kept in their natural state for those who sought recreation in such a relatively wild setting. The path is in even less of a natural state than the city park in *Goodwin*. The people who use the path are interested in recreation, but there is no reason to think that they use it to feel reconnected with wild nature as they ride along and take in a vista of power lines, parking lots, warehouses, cyclone fences, stacks of industrial pipes, and utility poles, towers, and wires.

¶ 31    The frequent appearance of bunnies on the trail does not, in our judgment, call the foregoing analysis into question.

- 7 -

¶ 32      We note further that, aside from the definitional obstacles to calling the path a riding trail, the underlying purpose of section 3-107(b)'s grant of absolute immunity, even for willful and wanton conduct, is not consistent with the trial court's result here. We agree with the *Goodwin* court that behind the categorical grant of immunity is the recognition of "the burden in both time and money if the local governmental entity were required to maintain these types of property in a safe condition" and that "requiring such maintenance would defeat the very purpose of these types of recreational areas, that is, the enjoyment of activities in a truly natural setting." *Goodwin*, 268 Ill. App. 3d at 493. These considerations do not apply to a bicycle or hiking path in the midst of an easily accessible developed area. Indeed, the City would not even be a party to this appeal had it not found it manageable to take on the burden of maintaining the path in a safe condition.

¶ 33      For the foregoing reasons, we hold that the trial court erred in holding that the path is a riding trail, thus triggering the absolute immunity provided by section 3-107(b) of the Act. The grant of summary judgment for the City is reversed, and the cause is remanded. Of course, as plaintiff has not appealed the grant of summary judgment for the County, that judgment remains intact.

¶ 34      Affirmed in part and reversed in part; cause remanded.