2017 IL App (2d) 160847
No. 2-16-0847
Opinion filed September 28, 2017

_____

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

_____

| | | |
|---|---|---|
| SARAH COLELLA and IGNATIUS COLELLA, | ) ) | Appeal from the Circuit Court of Du Page County. |
| | ) | |
| Plaintiffs-Appellants, | ) | |
| | ) | |
| v. | ) | No. 14-L-418 |
| | ) | |
| THE LOMBARD PARK DISTRICT and THE VILLAGE OF LOMBARD, | ) ) | |
| | ) | |
| Defendants | ) | |
| | ) | Honorable |
| (The Lombard Park District, Defendant- Appellee). | ) ) | Robert G. Kleeman, Judge, Presiding. |

_____

JUSTICE HUTCHINSON delivered the judgment of the court, with opinion.
Justices Zenoff and Birkett concurred in the judgment and opinion.

**OPINION**

¶ 1    Plaintiffs, Sarah and Ignatius Colella, filed a complaint against defendants, the Lombard Park District (Park District) and the Village of Lombard (Village), relating to an injury that Sarah sustained while she was walking on a Park District path.   To be specific, Sarah's leg was impaled by a piece of rebar protruding from a railroad tie that was apparently dumped on the Park District property.   Plaintiffs appeal the trial court's order granting the Park District's motion to dismiss plaintiffs' fourth amended complaint pursuant to section 2-619 of the Code of Civil Procedure (Code) (735 ILCS 5/2-619 (West 2014)).   In granting the Park District's motion,

the trial court ruled that the Park District was immune from liability pursuant to sections 3-106 and 3-107(b) of the Local Governmental and Governmental Employees Tort Immunity Act (Tort Immunity Act) (745 ILCS 10/3-106, 3-107(b) (West 2014)).   We affirm.

¶ 2                                I. BACKGROUND

¶ 3    We begin by summarizing the allegations contained in plaintiffs' third amended complaint.   On April 29, 2013, Sarah was walking her dog along a "nature/walking path" in Westmore Woods, a park located within the Village and controlled by the Park District.   During her walk, Sarah "tripped and fell and her leg was impaled by a large nail/spike protruding from a piece of lumber such as a railroad tie or landscape timber that should not have been on the nature path."   Pictures in the record depicting Sarah's injury show a piece of rebar, approximately 18 inches long, piercing completely through Sarah's left calf, such that the rebar entered one side of her calf and exited on the other side.

¶ 4    Plaintiffs alleged that debris had been dumped on the grounds of the Westmore Woods property prior to a heavy rainstorm that occurred on April 17, 2013.   The storm produced extensive flooding that caused the displacement of debris throughout the Westmore Woods property.   Plaintiffs alleged that defendants had actual and constructive notice of the dumping and displacement of debris, as these conditions had been reported to Park District personnel and had been recorded on the Park District's daily work logs.

¶ 5    The third amended complaint contained six counts: three naming the Park District (counts I, III, and V) and three naming the Village (counts II, IV, and VI).   Counts I and II alleged willful and wanton conduct; counts III and IV alleged that Ignatius had suffered a loss of consortium; and counts V and VI alleged ordinary negligence.

¶ 6    The Park District and the Village separately filed combined motions to dismiss plaintiffs' third amended complaint, pursuant to section 2-619.1 of the Code (735 ILCS 5/2-619.1 (West 2014)). The Village argued that it owed no duty to plaintiffs, citing an intergovernmental agreement with the Park District establishing that the Park District was exclusively responsible for the management and maintenance of Westmore Woods. The trial court granted the Village's motion to dismiss counts II, IV, and VI with prejudice, finding that plaintiffs had failed to allege that the Village owed them a duty. Plaintiffs have not appealed the trial court's ruling with respect to the Village, and the Village is not a party to this appeal.

¶ 7    The Park District argued in its motion that it was entitled to a dismissal under section 2-615 of the Code (735 ILCS 5/2-615 (West 2014)), maintaining that plaintiffs had failed to allege facts showing that it had actual or constructive notice of the presence of the specific piece of "spiked timber" that caused Sarah's injury. (For the sake of brevity, we will hereinafter refer to the railroad tie with the protruding rebar as the "spiked timber.") The Park District also argued that it was entitled to a dismissal under section 2-619 of the Code (735 ILCS 5/2-619 (West 2014)), asserting that it was immune from liability under two sections of the Tort Immunity Act. The Park District first asserted that it was immune from liability for ordinary negligence pursuant to section 3-106 of the Tort Immunity Act (745 ILCS 10/3-106 (West 2014)), because the spiked timber constituted a "condition" of public property intended or permitted to be used for recreational purposes. The Park District next asserted that, because the spiked timber also constituted a "condition" of a "hiking trail" within the meaning of section 3-107(b) of the Tort Immunity Act (745 ILCS 10/3-107(b) (West 2014)), it was immune from liability for willful and wanton conduct.

¶ 8    Attached to the Park District's motion was the affidavit of park superintendant Bill Sosnowski, who denied that there had been any reports of debris along the path where Sarah was injured. Sosnowski opined that the spiked timber had been dumped in Westwood Woods and had washed onto the path as a result of the recent flooding.

¶ 9    On August 3, 2015, following arguments, the trial court denied the Park District's motion, finding that plaintiffs' allegations were sufficient under section 2-615 of the Code to state the causes of action set forth in counts I (willful and wanton conduct), III (loss of consortium), and V (ordinary negligence). The trial court further found that it would be "premature" to grant the Park District's motion under section 2-619 of the Code, as the arguments pertaining to the Tort Immunity Act involved "fact-driven" issues.

¶ 10    The pleadings reflect that the judge who denied the Park District's motion to dismiss was administratively transferred to a different courtroom on or around September 14, 2015. On September 24, 2015, the Park District filed a motion requesting that the newly assigned judge reconsider the first judge's ruling. The motion focused specifically on the application of sections 3-106 and 3-107(b) of the Tort Immunity Act. Following a hearing, the newly assigned judge stated his disagreement with the first judge's ruling. The newly assigned judge believed that sections 3-106 and 3-107(b) both applied, and accordingly he entered an order granting the Park District's motion to reconsider. However, the newly assigned judge acknowledged that he had only recently been assigned to the case, and he commented that "fairness dictates I give [plaintiffs] an opportunity to see if [they] can accommodate what are new concerns from the bench." On that basis, plaintiffs were granted leave to file a fourth amended complaint.

¶ 11    Plaintiffs' fourth amended complaint, which was nearly identical to their third amended complaint, added an allegation that the Park District "[w]illfully and wantonly misused the nature/walking path of Westmore Woods by allowing the dumping of debris on [Park District] land despite repeated complaints to the [Park District] about said dumping of debris thereby allowing for the property to no longer be safe."   Consistent with its argument during the hearing on its motion to reconsider, the Park District filed a motion to dismiss plaintiffs' fourth amended complaint, based solely on section 2-619 of the Code.   The motion relied exclusively on sections 3-106 and 3-107(b) of the Tort Immunity Act.

¶ 12    On September 7, 2016, the trial court conducted a hearing on the Park District's motion to dismiss plaintiffs' fourth amended complaint.   Following arguments, the trial court stated that its earlier conclusions remained unaffected by plaintiffs' additional allegation that the Park District "misused" the Westmore Woods property by "allowing the dumping of debris." Accordingly, the trial court granted the Park District's section 2-619 motion to dismiss plaintiffs' fourth amended complaint, with prejudice.

¶ 13    Plaintiffs filed a timely notice of appeal.

¶ 14                                    II. ANALYSIS

¶ 15    Our review here is confined to the trial court's order granting the Park District's motion to dismiss plaintiffs' fourth amended complaint pursuant to section 2-619 of the Code.   The purpose of a section 2-619 motion to dismiss "is to dispose of issues of law and easily proved issues of fact at the outset of litigation."   *Van Meter v. Darien Park District*, 207 Ill. 2d 359, 367 (2003).   A section 2-619 motion admits the sufficiency of the complaint, but asserts an affirmative matter that defeats the claim.   *Bjork v. O'Meara*, 2013 IL 114044, ¶ 21.   Immunity under the Tort Immunity Act is an affirmative matter that is properly raised in a section 2-619 motion to dismiss.   *DeSmet*

*v. County of Rock Island*, 219 Ill. 2d 497, 504 (2006). When ruling on a section 2-619 motion, a court must interpret all pleadings and supporting documents in the light most favorable to the nonmoving party. *Porter v. Decatur Memorial Hospital*, 227 Ill. 2d 343, 352 (2008). The motion should be granted only if the plaintiff can prove no set of facts that would support a cause of action. *Feltmeier v. Feltmeier*, 207 Ill. 2d 263, 277-78 (2003). A section 2-619 dismissal is subject to *de novo* review. *Van Meter*, 207 Ill. 2d at 368.

¶ 16 Here, the trial court granted the Park District's section 2-619 motion on the basis of its ruling that the Park District was immune from liability for Sarah's injury pursuant to sections 3-106 and 3-107(b) of the Tort Immunity Act. These sections carve separate immunities from a local public entity's duty to exercise ordinary care to maintain its property in a reasonably safe condition. See 745 ILCS 10/3-102(a) (West 2014). The pertinent statutory language reads as follows.

¶ 17 Section 3-106 provides:

"Neither a local public entity nor a public employee is liable for an injury where the liability is based on the existence of a condition of any public property intended or permitted to be used for recreational purposes, including but not limited to parks, playgrounds, open areas, buildings or other enclosed recreational facilities, unless such local entity or public employee is guilty of willful and wanton conduct proximately causing such injury." 745 ILCS 10/3-106 (West 2014).

¶ 18 Section 3-107 provides:

"Neither a local public entity nor a public employee is liable for an injury caused by a condition of: (a) Any road which provides access to fishing, hunting, or primitive camping, recreational, or scenic areas and which is not a (1) city, town or village street, (2) county,

state or federal highway or (3) a township or other road district highway. (b) Any hiking, riding, fishing or hunting trail." 745 ILCS 10/3-107 (West 2014).

¶ 19    As seen above, section 3-106 provides immunity only for negligent conduct, but it applies to injuries connected with a broad category of public properties. However, section 3-107 provides absolute immunity for both ordinary negligence and willful and wanton conduct relating to injuries connected with a narrow category of trail and access-road properties. *Scott v. Rockford Park District*, 263 Ill. App. 3d 853, 856-57 (1994); see also *Ries v. City of Chicago*, 242 Ill. 2d 205, 224 (2011) (noting that, when the plain language of an immunity provision in the Tort Immunity Act contains no exception for willful and wanton conduct, it is presumed that the legislature intended to immunize liability for both negligence and willful and wanton conduct). Thus, a ruling that section 3-107 applies obviates the need to consider whether section 3-106 also applies. We will therefore begin by addressing section 3-107.

¶ 20    In granting the Park District's section 2-619 motion to dismiss, the trial court found that Sarah's injury was "caused by a condition of *** [a]ny hiking, riding, fishing, or hunting trail" under section 3-107(b). 745 ILCS 10/3-107(b) (West 2014). Plaintiffs argue that the trial court's ruling was incorrect for two reasons. First, plaintiffs argue that Sarah's injury did not occur on a "trail" within the meaning of section 3-107(b). Plaintiffs' second argument is that Sarah's injury was not caused by a "condition" of a trail within the meaning of section 3-107(b). We will address these arguments in turn.[1]

---

[1] We note that, as used in the Tort Immunity Act, the phrase "[w]illful and wanton conduct" means "a course of action which shows an actual or deliberate intention to cause harm or which, if not intentional, shows an utter indifference to or conscious disregard for the safety of

¶ 21    Plaintiffs did not raise their first argument in the trial court, as it is based on this court's holding in a decision that was published shortly after the trial court granted the Park District's motion to dismiss.    In *Corbett v. County of Lake*, 2016 IL App (2d) 160035, *appeal allowed*, No. 121536 (Ill. Jan. 25, 2017), this court held that a paved bicycle path running parallel to a highway was not a "trail" within the meaning of the Tort Immunity Act.    We first noted that, to be considered a "trail" under section 3-107(b), a path must be located in a "forest or mountainous region."    *Id.* ¶ 29; see also *McElroy v. Forest Preserve District of Lake County*, 384 Ill. App. 3d 662, 667 (2008); *Mull v. Kane County Forest Preserve District*, 337 Ill. App. 3d 589, 591 (2003) (quoting Webster's Third New International Dictionary 2423 (1993)).    We continued by holding in pertinent part:

> "As a matter of law, this restriction defeats the [defendant's] assertion that the path
> is a riding or hiking trail.    No contention has been made that the path is located in a
> mountainous region (mountains being scarce in Lake County).    No serious contention can
> be made that the path is located in a forest; no reasonable person who views the
> photographs of the path and its surroundings, or even reads their descriptions by those who
> have seen them, would describe those surroundings as a forest.    The path is bordered by
> narrow bands of greenway that sport some shrubs and a few trees; these narrow bands are
> surrounded by industrial development, residential neighborhoods, parking lots, railroad

others or their property."    745 ILCS 10/1-210 (West 2014).    Here, plaintiffs have alleged that the Park District willfully and wantonly allowed the dumping of debris and failed to subsequently remove the debris, despite having actual or constructive notice of its presence.    As the issue is not squarely before us, we need not address the sufficiency of these allegations.

tracks, and major vehicular thoroughfares (to the east *and* south of the area of the accident). The case for considering the path a riding trail would not succeed even if utility poles could be considered trees with power lines for branches." (Emphasis in original.) *Corbett*, 2016 IL App (2d) 160035, ¶ 29.

¶ 22 Here, plaintiffs note that Westmore Woods has been improved with additions such as a pond, a playground, picnic tables, and a baseball diamond. They assert that Westmore Woods is not a "forest preserve," but rather a "park that uses trees as props for city outings." Plaintiffs argue that these improvements to Westmore Woods make this case analogous to *Corbett* and that section 3-107(b) thus does not apply. We disagree. Plaintiffs' argument is creative, but not persuasive.

¶ 23 Although the Park District has not specifically designated Westmore Woods as a "forest preserve," it remains that the path where Sarah was injured is nothing like the paved bicycle path in *Corbett*. The path in *Corbett* was sandwiched between a highway and a set of railroad tracks, with commercial buildings and stacked industrial materials lining both sides. *Id*. ¶ 12. However, the pictures in the record depicting the area where Sarah was injured establish that Westmore Woods was aptly named: they show a dirt path winding through a densely wooded landscape. Trees abound and shrubs flourish in their natural state. In layman's terms, the pictures depict a trail running through a forest.

¶ 24 Plaintiffs' reliance on *Corbett* is misplaced. We did not hold in *Corbett*, as plaintiffs suggest, that the development of surrounding property automatically disqualifies a path from being considered a "trail" under section 3-107(b). To the contrary, we specifically clarified that "the character of a path as a 'trail' is not automatically defeated by the existence of any development in the surrounding area." *Id.* ¶ 28. We acknowledged that a " 'forest' " could

retain its character "even with a moderate degree of improvement within and without." *Id.* ¶ 30. We noted, however, that "[a]n industrial/commercial/residential area is not a forest because it contains narrow strips of green space on which a few trees stand." *Id.* Thus, our concern in *Corbett* was whether the term "trail" under section 3-107(b) should be construed so broadly as to provide absolute immunity for an injury that occurred on an urban path lacking any natural or scenic characteristics. See also *Brown v. Cook County Forest Preserve*, 284 Ill. App. 3d 1098, 1101 (1996) (concluding that "paved bicycle paths that traverse developed city land are not properly classified as 'riding trails' for purposes of section 3-107(b)"). Because no such concerns are implicated in this case, we hold that, for purposes of section 3-107(b), Sarah was injured on a "hiking trail."

¶ 25 We now turn to plaintiffs' argument that Sarah's injury was not caused by a "condition" of a trail within the meaning of section 3-107(b). Before addressing the merits of that argument, we note that "[s]tatutory language must be given its plain and ordinary meaning, and courts are not free to construe a statute in a manner that alters the plain meaning of the language adopted by the legislature." *Murray v. Chicago Youth Center*, 224 Ill. 2d 213, 235 (2007). "If the language of a statute is clear, this court must give effect to its plain and ordinary meaning without resort to other aids of statutory construction." *Id.* We will not depart from the plain language of the Tort Immunity Act by reading into it exceptions, limitations, or conditions that conflict with the express legislative intent. *In re Chicago Flood Litigation*, 176 Ill. 2d 179, 193 (1997).

¶ 26 Here, plaintiffs contend that the spiked timber did not constitute a "condition" of a trail within the meaning of section 3-107(b), arguing that section 3-107 applies only to "physical" or "natural" conditions. In support, plaintiffs point to *Sites v. Cook County Forest Preserve District*,

257 Ill. App. 3d 807 (1994), and *Goodwin v. Carbondale Park District*, 268 Ill. App. 3d 489 (1994).

¶ 27    The plaintiff in *Sites* was injured when his bicycle struck a cable gate that was stretched across a road providing access to a forest preserve. *Sites*, 257 Ill. App. 3d at 808. In concluding that the cable gate was not a "condition" of the access road, the appellate court held as follows:

> "We infer that the statutory intent [of section 3-107] is to relieve public entities from the duty to maintain such access roads, which may be unpaved and uneven. But a structure erected on an access road, such as the chain or cable gate causing plaintiff's injury, should not be considered a physical condition of the road covered by section 3-107. The structure was an artificial barrier that was not a part of the road itself. The statute does not appear to have the purpose to relieve public entities from liability for injuries caused by structures erected on the exempted roads." *Id*. at 811.

¶ 28    The plaintiff in *Goodwin* was injured when his bicycle collided with a tree that had fallen across a paved bike path within a city park. *Goodwin*, 268 Ill. App. 3d at 490. The *Goodwin* court affirmed the trial court's ruling that section 3-106 applied to provide the park district with immunity for the plaintiff's ordinary-negligence claims. However, the *Goodwin* court reversed the trial court's ruling that the bike path constituted a "riding trail" within the meaning of section 3-107(b), thereby reinstating the plaintiff's willful-and-wanton-conduct claims. *Id.* at 491. In so ruling, the *Goodwin* court commented as follows:

> "Reading section 3-107 as a whole indicates that the property referred to therein is unimproved property which is not maintained by the local governmental body and which is in its natural condition with obvious hazards as a result of that natural condition. *** Absolute immunity is extended for injuries sustained on these types of property because of

the burden in both time and money if the local governmental entity were required to maintain these types of property in a safe condition." *Id.* at 493.

¶ 29     We are not persuaded by the comments in *Sites* or *Goodwin* that section 3-107 applies only to "physical" or "natural" conditions.    To begin, the Park District characterizes *Sites* as "questionable legal authority," noting that it conflicts with *Kirnbauer v. Cook County Forest Preserve District*, 215 Ill. App. 3d 1013 (1991), an earlier First District case.    In *Kirnbauer*, the court concluded that section 3-107 applied when the plaintiff was injured by a steel cable that was stretched across the entrance to a forest preserve.    *Id*. at 1023-24.    Furthermore, in *McElroy*, 384 Ill. App. 3d at 669, this court held that the immunity provided by section 3-107 applies to manmade objects such as a wooden bridge or a boardwalk.    Thus, the statements in *Sites* pertaining to manmade structures are contradicted by our holding in *McElroy*.    The same holds true to an extent regarding *Goodwin*.    In *McElroy*, we explicitly stated our disagreement with the *Goodwin* court's contention that a trail must be " 'unimproved' " to fall under section 3-107(b). *Id.* at 667 (quoting *Goodwin*, 268 Ill. App. 3d at 493).

¶ 30     With regard to the *Goodwin* court's comment that section 3-107 applies to property "in its natural condition with obvious hazards as a result of that natural condition," we note that the legislature could have easily added such an exception to section 3-107 if it deemed necessary. See, *e.g.*, Cal. Gov't Code § 831.2 (West 2016) ("Neither a public entity nor a public employee is liable for an injury caused by a *natural* condition of any unimproved public property, including but not limited to any *natural* condition of any lake, stream, bay, river or beach." (Emphases added.)). Moreover, the *Goodwin* court's comments indicate that section 3-107 applies broadly to all "injuries sustained on" access roads and trails, thus contradicting the notion that section 3-107 applies only to those injuries caused by naturally occurring conditions.    *Cf. Foust v. Forest*

*Preserve District*, 2016 IL App (1st) 160873, ¶ 48 ("The plain language of [section 3-107(b)] thus requires the injury to be caused by a condition of a trail, and the only reasonable interpretation of that language is that for there to be immunity, there must be something on the trail itself that caused the injury.").

¶ 31    However, the *Goodwin* court's observation of the policy reasons underlying section 3-107 is well taken.    A countless number of dangerous conditions, both naturally and unnaturally occurring, undoubtedly exist on the many access roads and trails to which section 3-107 applies. Suppose, for instance, that the fallen tree from *Goodwin* was every bit as menacing as the spiked timber in this case and that it was lying across the Westmore Woods trail, just a short distance beyond the point of Sarah's injury.    We find nothing in the plain language of section 3-107 to indicate that our legislature intended to immunize the Park District from liability for willful and wanton conduct relating to the fallen tree but not to the spiked timber.    A holding to the contrary would effectively impose a burden on local public entities that undermines the purpose of section 3-107.    See *Cohen v. Chicago Park District*, 2016 IL App (1st) 152889, ¶ 42 ("By immunizing a public entity from liability for injuries occurring on the property specified in section 3-107, the legislature has, in effect, relieved public entities from the burden of having to maintain such property.").

¶ 32    For all of these reasons, we hold that the spiked timber was a "condition" of the trail within the meaning of section 3-107(b), such that the Park District is entitled to absolute immunity from liability for Sarah's injury.    We therefore affirm the trial court's order granting the Park District's section 2-619 motion to dismiss.

¶ 33    However, before we conclude, we take a few moments to address plaintiffs' alternative argument in reliance on *McCuen v. Peoria Park District*, 163 Ill. 2d 125 (1994).    This relates to

plaintiffs' additional allegation in their fourth amended complaint that the Park District "[w]illfully and wantonly misused the nature/walking path of Westmore Woods by allowing the dumping of debris on [Park District] land despite repeated complaints to the [Park District] about said dumping of debris thereby allowing for the property to no longer be safe." Although *McCuen* involved limited immunity under section 3-106, plaintiffs assert that we should apply the reasoning from that case in the context of section 3-107.

¶ 34   The plaintiffs in *McCuen* were injured when they were thrown from a mule-drawn hayrack. They alleged that their injuries were caused by a park district employee's negligent handling of the mule team, in that he caused the mules to suddenly bolt and run off without a driver. *Id.* at 126-27. As noted by the appellate court, there was no dispute that the hayrack and the mule team were public property. *McCuen v. Peoria Park District*, 245 Ill. App. 3d 694, 697 (1993). The park district argued, however, that the "driverless hayrack" constituted a "condition" of public property within the meaning of section 3-106. *McCuen*, 163 Ill. 2d at 129. In other words, the park district argued that the "driverless" nature of the hayrack constituted a "condition" of the hayrack itself. See *Grundy v. Lincoln Park Zoo*, 2011 IL App (1st) 102686, ¶ 8 (observing that the property at issue in *McCuen* was the hayrack, as opposed to real property).

¶ 35   In affirming the appellate court's ruling that section 3-106 did not apply, our supreme court first observed:

> "In order to determine whether section 3-106 applies, the court must determine whether liability for the injury alleged is based on 'the existence of a condition of any public property.' *If liability is not based on the existence of a condition of public property, section 3-106 does not apply*." (Emphasis added.) *McCuen*, 163 Ill. 2d at 128.

The court went on to hold in pertinent part:

"Plaintiffs do not claim that the hayrack itself was dangerous, defective or negligently maintained, only that the mule team was not handled properly by the park district employee. *The handling of the mule team does not relate to the condition of the hayrack itself.* If otherwise safe property is misused so that it is no longer safe, but the property itself remains unchanged, any danger presented by the property is due to the misuse of the property and not to the condition of the property." (Emphasis added.) *Id*. at 129.

¶ 36 Here, plaintiffs argue that the Park District's alleged "misuse" of the Westmore Woods property—allowing the dumping of debris—is similar to the conduct that was considered in *McCuen*. Plaintiffs maintain that section 3-106 is inapplicable because the Park District committed acts or omissions that created a danger on the otherwise safe Westmore Woods property. On that basis, plaintiffs argue that we should extend the reasoning in *McCuen* to section 3-107, meaning that the Park District's alleged "misuse" of the Westmore Woods property negates its ability to benefit from either statutory immunity. We disagree.

¶ 37 Again, section 3-106 provides that "[n]either a local public entity nor a public employee is liable for an injury *where the liability is based on the existence of a condition of* any public property intended or permitted to be used for recreational purposes." (Emphasis added.) 745 ILCS 10/3-106 (West 2014). It therefore stands to reason that section 3-106 does *not* apply if a plaintiff's theory of liability is *not* based on the existence of a condition of the property in question. *McCuen*, 163 Ill. 2d at 128. In *McCuen*, section 3-106 did *not* apply, because the plaintiffs' theory of liability was *not* based on the existence of a condition of the property in question: the hayrack. Rather, the plaintiffs' theory of liability was based on the negligent handling of the mule team, which did not relate to the condition of the hayrack itself. *Id*. at 128-29. *McCuen* therefore

demonstrates that, consistent with the plain language of section 3-106, the limited immunity provided in that section is unavailable if a plaintiff's theory of liability is based on conduct that is unrelated to the existence of a condition of the property in question.   See also *Manuel v. Red Hill Community Unit School District No. 10 Board of Education*, 324 Ill. App. 3d 279, 285 (2001) ("Accepting the plain meaning of the language, the theory of liability upon which plaintiff bases her case determines whether section 3-106 applies regardless of whether the condition of the property caused her injury.").

¶ 38    That brings us to the subtle difference in the plain language of sections 3-106 and 3-107. Unlike section 3-106, section 3-107 provides no exceptions for alternative theories of liability. That is to say, for purposes of section 3-107, it does not matter whether liability is based on conduct unrelated to the existence of a condition of an access road or trail.   Rather, section 3-107 applies if an injury is simply "caused by a condition of" an access road or trail.   745 ILCS 10/3-107 (West 2014).   Therefore, our determination that Sarah's injury in this case was caused by a "condition" of a "hiking trail" within the meaning of section 3-107(b) marks the end of our inquiry.   By asserting that their alternative theory of liability negates the application of section 3-107, plaintiffs are placing the hayrack ahead of the mule team.

¶ 39    In sum, we affirm the trial court's ruling that Sarah's injury was caused by a "condition" of the Westmore Woods "hiking trail" within the meaning of section 3-107(b).   Therefore, the Park District is entitled to absolute immunity from liability for Sarah's injury.   In so holding, we reject plaintiffs' argument that the Park District's alleged conduct negates its ability to benefit from the absolute immunity provided by section 3-107.   Our discussion pertaining to section 3-106 is intended to ensure that sections 3-106 and 3-107 are interpreted consistently and harmoniously and

are governed by a single policy.   See *Wade v. City of North Chicago Police Pension Board*, 226 Ill. 2d 485, 512 (2007).

¶ 40                                        III. CONCLUSION

¶ 41     The judgment of the circuit court of Du Page County is affirmed.

¶ 42     Affirmed.