(No. 64946.—

M.I.G. INVESTMENTS, INC., *et al.*, Appellees, v. THE ENVIRONMENTAL PROTECTION AGENCY *et al.*, Appellants.

*Opinion filed April 25, 1988.—Rehearing denied May 31, 1988.*

MORAN, C.J., and MILLER, J., took no part.

Neil F. Hartigan, Attorney General, of Springfield (Roma Jones Stewart, Solicitor General, and Gerald T. Karr and H. Alfred Ryan, Assistant Attorneys General, of Chicago, of counsel), for appellants.

Immel, Zelle, Ogren, McClain, Germeraad & Costello, of Springfield (Thomas J. Immel and Lee K. Zelle, of counsel), for appellees.

Roger Russell, State's Attorney, of Belvidere, and Paul Perona, Special Assistant State's Attorney, of Peru, for *amicus curiae* County of Boone.

Donna R. Henderson, of Henderson & Henderson, of Waukegan, for *amicus curiae* Village of Antioch.

JUSTICE WARD delivered the opinion of the court:

The plaintiff, M.I.G. Investments, Inc., filed a petition for a supplemental development permit with the Illinois Environmental Protection Agency (Agency) to increase the vertical contour levels of its landfill, located in Boone County, to an elevation of 872 feet above sea level. The Agency denied the petition on the ground that the plaintiff had failed to obtain local governmental approval for the proposed expansion pursuant to section 39(c) of the Environmental Protection Act (Act) (Ill. Rev. Stat. 1985, ch. 111½, par. 1039(c)). The Pollution Control Board (Board), with one member dissenting, affirmed the Agency's decision, and the plaintiff appealed to the appellate court, which reversed, holding that under section 39(c), local government approval is not required for a vertical expansion of an existing landfill facility. (151 Ill. App. 3d 488.) We granted the Agency's petition for leave to appeal under Supreme Court Rule 315(a). 107 Ill. 2d R. 315(a).

The plaintiff, M.I.G. Investments, Inc., operates a solid waste disposal landfill in Boone County pursuant to a permit granted by the Illinois Environmental Protection Agency in May 1972. (See Ill. Rev. Stat. 1985, ch. 111½, par. 1039.) The permit allows the plaintiff to dispose of residential, commercial and industrial waste and contains a standard condition that the landfill's operation be conducted in accordance with a design plan submitted by the plaintiff's engineers. The plans set out the facility's proposed dimensions as approximately 1,900 feet by

1,300 feet, with a maximum elevation of 827 feet above sea level.

On January 24, 1985, the plaintiff petitioned the Agency for a supplemental development permit pursuant to section 39 of the Act (Ill. Rev. Stat. 1985, ch. 111½, par. 1039) to vertically increase the final contour levels of its landfill to a maximum elevation of 872 feet above sea level. The Agency denied the petition on the ground that, *inter alia*, the plaintiff had failed to obtain local governmental approval for the proposed expansion pursuant to section 39(c) of the Act (Ill. Rev. Stat. 1985, ch. 111½, par. 1039(c)). Under section 39(c), the Agency cannot grant a permit for the expansion of an existing landfill facility without the approval of the municipality or county in which the facility is located if the proposed expansion would create a "new regional pollution control facility" as defined in section 3(x)(2) of the Act (Ill. Rev. Stat. 1985, ch. 111½, par. 1003(x)(2)). Section 3(x)(2) defines a "new regional pollution control facility" as "the area of expansion beyond the boundary of a currently permitted regional pollution control facility."

The plaintiff appealed the Agency's decision to. the Illinois Pollution Control Board (see Ill. Rev. Stat. 1985, ch. 111½, par. 1040.1(b)). The parties stipulated that all the reasons cited for the Agency's denial had been resolved with the exception of the plaintiff's failure to obtain local governmental approval under section 39(c). The Board affirmed the Agency's determination, stating that any expansion of an existing landfill, laterally or vertically, creates a "new regional pollution control facility" as defined in section 3(x)(2) (Ill. Rev. Stat. 1985, ch. 111½, par. 1003(x)(2)).

The plaintiff appealed directly to the appellate court (see Ill. Rev. Stat. 1985, ch. 111½, par. 1041), which reversed, holding that a vertical expansion of an existing

pollution control facility does not constitute a "new" facility under section 3(x)(2). (151 Ill. App. 3d at 494.) The court stated that because the terms "area" and "boundary" commonly refer to surface measurements, "the boundary of a 'currently permitted' facility is determined by the length and width allowed in the original permit. It is when the landfill wishes to increase its length or width that it can be said to seek expansion beyond its present boundary." (151 Ill. App. 3d at 493.) Consequently, the court concluded, local governmental approval was not required for the plaintiff's proposed expansion of its landfill facility. We granted the Agency's petition for leave to appeal under our Rule 315(a). 107 Ill. 2d R. 315(a).

Initially, we must address the Agency's motion to dismiss this appeal and vacate the decisions of the appellate court and the Pollution Control Board on the ground that the plaintiff's petition contesting the Agency's denial of its supplemental permit was not filed with the Board until after the 35-day deadline prescribed by section 40(a)(1) of the Act, which provides:

"If the Agency refuses to grant or grants with conditions a permit under Section 39 of this Act, the applicant may, within 35 days, petition for a hearing before the Board to contest the decision of the Agency." Ill. Rev. Stat. 1985, ch. 111½, par. 1040(a)(1).

The Agency claims that the notice requirements set out in section 40, which are also embodied in section 105.102 of the Board's own procedural rules (see 35 Ill. Adm. Code §105.102 (1985)), must be followed in order to vest the Board with jurisdiction to hear a plaintiff's appeal. Therefore, it contends, since the Board lacked jurisdiction to review the Agency's decision, all subsequent decisions are void, and this appeal should be dismissed.

The record shows that the plaintiff's petition to contest the Agency's decision was received by the clerk of the Board on May 3, 1985, one day after the expiration of the statutory filing period. The plaintiff argues, however, that the Board adheres to the "mailed is filed" practice for purposes of determining the timeliness of the filing of a petition contest, citing *Interstate Pollution Control, Inc. v. Illinois Environmental Protection Agency* (March 27, 1986), P.C.B. 68—547. Because its petition was sent by certified mail on May 1, the plaintiff asserts, correctly, we consider, that it should be deemed filed on that date, and therefore within the statutory period in section 40 of the Act.

The language of section 40 is permissive, not mandatory. It states that "the applicant *may*, within 35 days, petition for a hearing before the Board." (Emphasis added.) (Ill. Rev. Stat. 1985, ch. 111½, par. 1040(a)(1).) Too, in the cited decision, *Interstate Pollution Control, Inc.*, the Board stated that it would follow the "mailed is filed" rule for the purposes of initial pleadings filed under section 40(a)(1). Although this decision was announced after the applicable filing deadlines involved here, the Agency has cited no contrary Board decision and the record shows that the Board itself deemed the plaintiff's permit appeal to have been timely filed. The Agency's motion to dismiss this appeal is denied.

The question we address here is one of statutory construction: whether it was the legislature's intent to include vertical expansions of existing "regional pollution control facilities" within the definition of a "new" facility set out in section 3(x)(2) of the Act (Ill. Rev. Stat. 1985, ch. 111½, par. 1003(x)(2)).

In construing a statute, it is fundamental that a court is to "ascertain and give effect to the legislative intent." (*People v. Haywood* (1987), 118 Ill. 2d 263, 270-71; *People v. Maya* (1985), 105 Ill. 2d 281, 287.) In do-

ing this, the court should consider not only the language of the statute but also the " 'reason and necessity for the law, the evils to be remedied, and the objects and purposes to be obtained.' " (*People v. Steppan* (1985), 105 Ill. 2d 310, 316, quoting *People v. Alejos* (1983), 97 Ill. 2d 502, 511.) "If the legislative intent can be determined from unambiguous language of the statute, that intent will be given effect without necessity of resort to aids of construction." (*Page v. Hibbard* (1987), 119 Ill. 2d 41, 46; *Franzese v. Trinko* (1977), 66 Ill. 2d 136, 139.) Too, it is axiomatic that if a statute contains language with an ordinary and popularly understood meaning, courts will assume that that is the meaning intended by the legislature. *People v. Haywood* (1987), 118 Ill. 2d 263, 276; *People v. Schwartz* (1976), 64 Ill. 2d 275, 280.

In 1981, the General Assembly enacted Public Act No. 82−682 (effective November 12, 1981), which amended section 39.2 of the Act, giving county and municipal governments a limited degree of control over new solid waste disposal sites within their boundaries. Prior to the amendments to the Act, approval of permit applications for landfill facilities, in general, was entrusted to the Agency. (See *Carlson v. Village of Worth* (1975), 62 Ill. 2d 406.) The Act was amended "to place decisions regarding the sites for landfills with local authorities and to avoid having a regional authority (the Agency) in a position to impose its approval of a landfill site on an objecting local authority." (*E & E Hauling, Inc. v. Pollution Control Board* (1985), 107 Ill. 2d 33, 42.) Under the amended statute, local county boards must determine whether a landfill applicant meets certain statutory criteria set out in section 39.2 of the Act:

"(i) [T]he facility is necessary to accommodate the waste needs of the area it is intended to serve;

(ii) the facility is so designed, located and proposed to be operated that the public health, safety and welfare will be protected;

(iii) the facility is located so as to minimize incompatibility with the character of the surrounding area and to minimize the effect on the value of the surrounding property;

(iv) the facility is located outside the boundary of the 100 year flood plain as determined by the Illinois Department of Transportation, or the site is flood-proofed to meet the standards and requirements of the Illinois Department of Transportation and is approved by that Department;

(v) the plan of operations for the facility is designed to minimize the danger to the surrounding area from fire, spills, or other operational accidents;

(vi) the traffic patterns to or from the facility are so designed as to minimize the impact on existing traffic flows." Ill. Rev. Stat. 1985, ch. 111½, par. 1039.2.

Section 39(c) of the Act prohibits the Agency from granting a permit for the development or construction of a "new regional pollution control facility" unless the applicant submits proof that the facility has been approved by the local government under section 39.2 (Ill. Rev. Stat. 1985, ch. 111½, par. 1039(c)). A "new regional pollution control facility" is defined as:

"(1) a regional pollution control facility initially permitted for development or construction after July 1, 1981; or

(2) the area of expansion beyond the boundary of a currently permitted regional pollution control facility." Ill. Rev. Stat. 1985, ch. 111½, par. 1003(x).

The appellate court too narrowly construed the term "new pollution control facility" in section 3(x)(2). Considering the terms "area" and "boundary," it judged that the area of a "currently permitted" facility was to be determined solely by the length and width set out in the original permit. Therefore, the court found, a verti-

cal expansion of an existing pollution control facility does not expand its "boundaries" so that local governmental approval is required pursuant to section 39.2 of the Act.

The terms in a statute are not to be considered in a vacuum. They must be construed in the context of what they define; in this instance, a landfill facility. While the terms "area" and "boundary" may typically refer to lateral limitations, the nature of a landfill contemplates more than a mere surface utilization of the land. Indeed, the permit granting the plaintiff the right to operate its landfill sets out proposed boundaries that include both surface measurements and vertical elevation figures. Too, there is nothing in the language of the statute which limits the term "boundary" to the lateral dimensions of an existing facility. To impose such a limitation would be inconsistent with section 2(c) of the Act, which provides that "the terms and provisions of this Act shall be liberally construed so as to effectuate the purposes of this Act." Ill. Rev. Stat. 1985, ch. 111½, par. 1002(c).

The stated purpose of the Act, set out in section 2(b), is "to establish a unified, state-wide program supplemented by private remedies, to restore, protect and enhance the quality of the environment, and to assure that adverse effects upon the environment are fully considered and borne by those who cause them." (Ill. Rev. Stat. 1985, ch. 111½, par. 1002(b).) As stated earlier, the legislature amended the Act in 1981 to give local governmental authorities a voice in landfill decisions that affect them. From the language of section 3(x)(2), it is clear that the legislature intended to invest local governments with the right to assess not merely the location of proposed landfills, but also the impact of alterations in the scope and nature of previously permitted landfill facilities. In section 3(x)(2) a "new regional pol-

lution control facility" is defined as "the area of expansion beyond the boundary of a currently permitted" facility. Ill. Rev. Stat. 1985, ch. 111½, par. 1003(x)(2).

To expand the boundaries of a landfill, whether vertically or laterally, in effect, increases its capacity to accept and dispose of waste. An increase in the amount of waste contained in a facility will surely have an impact on the criteria set out in section 39.2(a), which local governmental authorities are to consider in assessing the propriety of establishing a new pollution control facility. Indeed, adjusting the dimensions of a landfill facility to increase the amount of waste stored will surely have an impact on "the danger to the surrounding area from fire, spills or other operational accidents" and "the character of the surrounding area." Ill. Rev. Stat. 1985, ch. 111½, pars. 1039.2 (v), (iii).

Moreover, contrary to the appellate court's conclusion, there is nothing in the record to indicate that a vertical expansion of an existing landfill facility would have little or no impact on the surrounding community in comparison with a lateral expansion. A vertical expansion which significantly increases the height of a landfill facility might have a substantial impact on the surrounding community. There is an obvious difference between a landfill facility which is at ground level and one which is visible to surrounding landowners due to its height. (See *Waste Management of Illinois, Inc. v. Pollution Control Board* (1984), 123 Ill. App. 3d 1075.) It would be unreasonable to consider that any increase, however small, in the lateral dimensions of a landfill facility is subject to the provisions of section 39.2 of the Act, while any vertical expansion is not.

We hold that the provisions of section 39.2 of the Act are to be applied in a proposal to increase vertically the waste disposal capacity of a landfill beyond the limits set out in the initial permit issued by the Agency.

For the reasons given, the motion to dismiss the appeal is denied, the judgment of the appellate court is reversed, and the decision of the Pollution Control Board is confirmed.

*Motion denied;*
*appellate court reversed;*
*board confirmed.*

MORAN, C.J., and MILLER, J., took no part in the consideration or decision of this case.