BI-STATE DISPOSAL, INC., Petitioner-Appellant, v. THE ENVIRONMENTAL PROTECTION AGENCY *et al.*, Respondents-Appellees.

Fifth District No. 5—89—0442

Opinion filed October 2, 1990.

Immel, Zelle, Ogren, McClain, Germeraad & Costello, of Springfield (Thomas J. Immel, of counsel), for petitioner.

Neil F. Hartigan, Attorney General, of Springfield (Christine Zeman, Assistant Attorney General, and John J. Kim, law graduate, of counsel), for respondents.

JUSTICE GOLDENHERSH delivered the opinion of the court:

Petitioner, Bi-State Disposal, Inc., appeals from an order of respondent, the Illinois Environmental Protection Agency (Agency), affirmed by the Illinois Pollution Control Board (Board), holding that a proposed modification of the landfill in question constitutes a new regional pollution control facility, and that petitioner must seek local site location suitability approval pursuant to section 39.2 of the Illinois Environmental Protection Act (the Act) (Ill. Rev. Stat. 1989, ch. 111½, par. 1039.2) before applying to the Agency for modification. We affirm.

On September 5, 1975, the former site operator received a developmental permit to develop the site in question. On March 10, 1978, an operating permit was issued. This permit allowed the 40-acre site to be developed in two phases. The second phase was to include the

filling of a mine cut, which bisected the site, with nonputrescible waste. On November 12, 1981, Public Act 82—682 became effective, amending the Act. The additional language requires new regional pollution control facilities to submit proof of local siting approval before applying for permits from the Agency. Ill. Rev. Stat. 1989, ch. 111½, pars. 1003.32, 1039(c).

On April 20, 1982, the operating permit was transferred to petitioner. Later in 1982, petitioner's consulting engineers proposed a modification of the facility which eliminated the mine cut from use. Agency regulations required petitioner to apply for a new permit reflecting the change, and on November 1, 1982, such a supplemental permit was issued to petitioner. An additional supplemental permit was issued on August 29, 1985, approving further modifications. Restoration of the mine cut's use was not at issue in that modification.

On January 13, 1989, petitioner applied for another supplemental permit seeking to reopen the mine cut for use. The Agency denied the permit application on February 15, 1989, holding that the requisite proof of local siting approval was not submitted. The Agency further held that petitioner failed to send out proper notices of filing as required by section 807.205(f) of the Board's Rules and Regulations. (35 Ill. Admin. Code §807.205(f) (1985).) Petitioner appealed, and the Board in an opinion dated June 8, 1989, found against petitioner, holding that the proposed permit modification constitutes a new regional pollution control facility and petitioner must seek local site suitability approval under section 39.2 of the Act. (Ill. Rev. Stat. 1989, ch. 111½, par. 1039.2.) As the siting issue was dispositive, the Board did not discuss the notice issue.

The sole issue on appeal is whether petitioner sought to establish a new regional pollution control facility or merely to use a portion of its existing facility. Petitioner specifically argues that the words "beyond the boundary of a currently permitted" facility of section 3.32 of the Act (Ill. Rev. Stat. 1989, ch. 111½, par. 1003.32) should be interpreted to mean "a facility for which a permit was held on July 1, 1981." Under petitioner's interpretation, a request to use an area within the geographical boundaries of the permitted area does not comprise a request for a new facility with its siting approval requirement. The Agency and Board respond that the purpose of the section was to require the approval of local authorities in the permit process. Moreover, the Agency argues that the word "currently" in the statute means "as of the present time" and not "as of the effective date."

Section 39(c) of the Act states, in pertinent part:

"[N]o permit for the development or construction of a new

regional pollution control facility may be granted by the Agency unless the applicant submits proof to the Agency that the location of said facility has been approved by the County Board of the county if in an unincorporated area, or the governing body of the municipality when in an incorporated area, in which the facility is to be located in accordance with Section 39.2 of this Act." (Ill. Rev. Stat. 1989, ch. 111½, par. 1039(c).) A "new regional pollution control facility" is defined by section 3.32(b) of the Act:

"(b) A new regional pollution control facility is:

(1) a regional pollution control facility initially permitted for development or construction after July 1, 1981; or

(2) the area of expansion beyond the boundary of a currently permitted regional pollution control facility; or

(3) a permitted regional pollution control facility requesting approval to store, dispose of, transfer or incinerate, for the first time, any special or hazardous waste." Ill. Rev. Stat. 1989, ch. 111½, pars. 1003.32 (b)(1), (b)(2), (b)(3).

 █ Basic tenets of statutory construction guide our consideration of this issue. This court must determine and give effect to the intent of the General Assembly in enacting the subject legislation. The language used is the primary source for determining this intent. (*United States Steel Corp. v. Pollution Control Board* (1978), 64 Ill. App. 3d 34, 43, 380 N.E.2d 909, 915.) If the plain language of the statute makes clear the legislative intent, the court need inquire no further. (*Franzese v. Trinko* (1977), 66 Ill. 2d 136, 139, 361 N.E.2d 585, 587.) Words used in a statute are to be given their ordinary and popularly understood meaning. (*Lake County Board of Review v. Property Tax Appeal Board* (1988), 119 Ill. 2d 419, 423, 519 N.E.2d 459, 461; *Illinois Power Co. v. Mahin* (1978), 72 Ill. 2d 189, 194, 381 N.E.2d 222, 224.) Although courts generally accord great deference to the interpretation placed on a statute by an agency charged with its administration, that interpretation will be rejected if erroneous. *Carson Pirie Scott & Co. v. Department of Employment Security* (1989), 131 Ill. 2d 23, 34, 544 N.E.2d 772, 777; *City of Decatur v. American Federation of State, County, & Municipal Employees, Local 268* (1988), 122 Ill. 2d 353, 361, 522 N.E.2d 1219, 1222.

In *M.I.G. Investments, Inc. v. Environmental Protection Agency* (1988), 122 Ill. 2d 392, 523 N.E.2d 1, the supreme court applied these tenets of statutory construction in considering this same statute. The court found that the General Assembly amended the Act to give local governmental authorities a voice in landfill decisions that affect them.

The court stated:

"From the language of section 3(x)(2) [Ill. Rev. Stat. 1985, ch. 111½, par. 1003(x)(2) (now section 3.32(2) (Ill. Rev. Stat. 1989, ch. 111½, par. 1003.32))], it is clear that the legislature intended to invest local governments with the right to assess not merely the location of proposed landfills, but also the impact of alterations in the scope and nature of previously permitted landfill facilities." 122 Ill. 2d at 400, 523 N.E.2d at 4.

In *M.I.G.*, the supreme court impliedly considered the "currently" debate in the instant case. In that case, the petitioners operated a landfill permitted since 1972. (*M.I.G. Investments, Inc. v. Environmental Protection Agency* (1986), 151 Ill. App. 3d 488, 489, 502 N.E.2d 1042, 1043.) In 1985, they submitted an application for a supplementary permit seeking to increase the vertical contour levels of the landfill. The supreme court noted that expanding the boundaries of a landfill increases its capacity to accept and dispose of waste. The court held that this increase impacts on the criteria local governmental authorities consider in assessing the propriety of establishing a new regional pollution control facility.

"To expand the boundaries of a landfill, whether vertically or laterally, in effect, increases its capacity to accept and dispose of waste. An increase in the amount of waste contained in a facility will surely have an impact on the criteria set out in section 39.2(a), which local governmental authorities are to consider in assessing the propriety of establishing a new pollution control facility. Indeed, adjusting the dimensions of a landfill facility to increase the amount of waste stored will surely have an impact on 'the danger to the surrounding area from fire, spills or other operational accidents' and 'the character of the surrounding area.' Ill. Rev. Stat. 1985, ch. 111½, pars. 1039.2(a)(v), (iii)." (122 Ill. 2d at 401, 523 N.E.2d at 5.)

As the facility was permitted in 1972, the court seems to have adopted the Agency's definition of currently—"as of the present time" and not "as of the effective date."

Although in *M.I.G.* the vertical increase would have been above, not below, ground level, the same standards apply in this case. Here, reinstating the mine cut will increase the capacity of the landfill to accept and dispose of waste. This increased capacity impacts on the criteria local governmental authorities consider in assessing the propriety of establishing a new regional pollution control facility.

■ In its opinion, the Board stated that it was bound by the interpretation of the term "currently" found in *Kozak v. Retirement*

*Board of the Firemen's Annuity & Benefit Fund* (1983), 95 Ill. 2d 211, 447 N.E.2d 394, in which the supreme court construed a statute that provided for the payment of a pension to widows of firemen dying in the line of duty. The statute called for a payment equal to a percentage of the "current annual salary" of the fireman's classified position at the time of his death. The supreme court interpreted the word to mean "at the present time." In light of our discussion above, the Board's reliance on *Kozak* is not erroneous.

■ The application for a supplemental permit constitutes a proposed expansion and thus a new regional pollution control facility. Petitioners seek to vertically expand, although into a ditch instead of above the ground, the boundaries of the landfill in question. Therefore, it is a new regional pollution control facility under the definition of section 3.32(2). (Ill. Rev. Stat. 1989, ch. 111½, par. 1003.32.) Petitioners must seek local siting approval before applying to the EPA for a permit.

For the foregoing reasons, the order of the Illinois Pollution Control Board is affirmed.

Affirmed.

RARICK and CHAPMAN, JJ., concur.