# Illinois Official Reports

## Supreme Court

---

### *Corbett v. County of Lake*, 2017 IL 121536

---

| | |
|---|---|
| Caption in Supreme Court: | KATHY CORBETT, Appellee, v. THE COUNTY OF LAKE *et al.* (City of Highland Park, Appellant). |
| Docket No. | 121536 |
| Filed | November 30, 2017 |
| Decision Under Review | Appeal from the Appellate Court for the Second District; heard in that court on appeal from the Circuit Court of Lake County, the Hon. Christopher C. Stark, Judge, presiding. |
| Judgment | Appellate court judgment affirmed.<br>Circuit court judgment reversed.<br>Cause remanded. |
| Counsel on Appeal | Matthew B. Knight and Michael J. Atkus, of Knight, Hoppe, Kurnik & Knight, Ltd., of Rosemont, for appellant.<br><br>Peter F. Higgins, of Lipkin & Higgins, of Chicago, and Lynn D. Dowd, of Naperville, for appellee.<br><br>Edward F. Dutton, of Lisle, for *amicus curiae* Park District Risk Management Agency. |

Justices                                 JUSTICE BURKE delivered the judgment of the court, with opinion.

Chief Justice Karmeier and Justices Freeman, Thomas, Kilbride, Garman, and Theis concurred in the judgment and opinion.

**OPINION**

¶ 1      At issue in this appeal is the meaning of section 3-107(b) of the Local Governmental and Governmental Employees Tort Immunity Act (Act) (745 ILCS 10/3-107(b) (West 2012)). The plaintiff filed a complaint at law in the circuit court of Lake County against the County of Lake (County) and the city of Highland Park (City) for personal injuries arising out of a bicycling accident on the Skokie Valley Bike Path. Defendants filed separate motions for summary judgment alleging various immunities under the Act. The circuit court allowed both motions and entered summary judgment in favor of defendants. Plaintiff appealed the judgment with respect to the City only.

¶ 2      The appellate court reversed the part of the circuit court's judgment pertaining to the City and remanded the cause to the circuit court. 2016 IL App (2d) 160035. The appellate court held that the circuit court erred in holding that the Skokie Valley Bike Path is a riding "trail" within the meaning of section 3-107(b) of the Act. *Id.* ¶ 33. Thus, the City could not assert absolute immunity under section 3-107(b). *Id.* We affirm the judgment of the appellate court but for different reasons.

¶ 3                                  BACKGROUND

¶ 4      On August 21, 2013, plaintiff, Kathy Corbett, was riding her bicycle with a group of other cyclists on the Skokie Valley Bike Path.[1] The group was riding south on a portion of the path running parallel to Skokie Valley Road (U.S. Route 41), between Park Avenue West and Old Deerfield Road, within the city of Highland Park. Plaintiff alleged that, prior to that date, defendants had been informed of a dangerous condition on that section of the path, in which "weeds and other vegetation were growing up through the asphalt ***, causing portions of the path to be broken, bumpy and elevated." Plaintiff alleged that she was thrown off her bicycle while riding over the defective portion of the path, causing her to sustain severe injuries. She alleged that her injuries were proximately caused by the willful and wanton acts or omissions of defendants.

¶ 5      According to documents in the record, at the time of plaintiff's accident the County was a party to a recreational lease agreement over the Skokie Valley Bike Path with Commonwealth Edison (ComEd). ComEd was the owner of the right-of-way encompassing the path, and the County was a tenant. Other documents in the record reveal that the County and the City were parties to a maintenance agreement, which provided that the City was responsible for routine maintenance on the portion of the path within the corporate limits of Highland Park. According to the agreement, "routine maintenance" included all activities necessary to keep the path in a reasonably safe and serviceable condition for bicycle and pedestrian traffic.

---

[1]Portions of the record refer to the path as the "Old Skokie Bike Path" or the "Skokie Valley Bikeway."

¶ 6    In its answer to plaintiff's complaint, the City raised various affirmative defenses, including immunity under section 3-107(b) of the Act. Defendants filed separate motions for summary judgment.[2] Relevant to this appeal, the City asserted in its motion that it was absolutely immune from liability, even for willful and wanton conduct, pursuant to section 3-107(b). That section provides, in part: "[n]either a local public entity nor a public employee is liable for an injury caused by a condition of: *** (b) Any hiking, riding, fishing or hunting trail." 745 ILCS 10/3-107(b) (West 2012). The City attached several exhibits in support of its motion. The exhibits included deposition transcripts of plaintiff and other witnesses.

¶ 7    Plaintiff testified in her deposition that, on the date of the accident, she was riding her bicycle with a group of people with whom she regularly rode. She had previously ridden on the particular stretch of path where the accident occurred. Plaintiff testified that section of the path was surrounded by shrubs and wild grasses. It was separated from residences and commercial businesses and set back from the highway. Plaintiff testified that the group was riding south on the path at a speed of 15 to 17 miles per hour as they approached a stop sign at Old Deerfield Road. The rider two places in front of her, Hasan Syed, hit a bump, lost control of his bicycle, and crashed. Plaintiff testified that the rider directly in front of her veered off, but she was not able to do so. Instead, she rode over Syed and flew off her bicycle, landing on the asphalt and sustaining multiple injuries.

¶ 8    Yves Roubaud testified in his deposition that he was riding with plaintiff and the others on August 21, 2013. He described the path as a bicycle path used by cyclists and walkers for recreational purposes. It had a yellow dividing line on it. Roubaud testified that the stretch of the path where the accident occurred was separated from residences and commercial businesses and set back from the highway. Roubaud stated that he was riding between Syed and plaintiff when Syed fell to the ground. Roubaud stated that he swerved to the left and rolled over Syed's leg but did not fall down. He then turned around and saw plaintiff lying on the ground, moaning in pain.

¶ 9    In his deposition, Syed testified that the path was used for recreational bicyclists riding at slow speeds and for walkers. He stated that the path was not intended to be used by professional riders but was "just for fun." Syed stated that the path had shrubs on both sides. Syed testified consistently with plaintiff and Roubaud regarding the events surrounding plaintiff's accident.

¶ 10    John Stevens testified in his deposition that he was riding with plaintiff and the others on August 21, 2013. He described the path as approximately six feet wide, paved with asphalt, and "lined by some type of growth most of the way, whether hedges or bushes." He stated that the path was not connected to any particular park. He also testified that the path was separated from commercial businesses and from traffic other than bicycles, walkers, and runners.

¶ 11    In her response to the City's motion for summary judgment, plaintiff argued that the path is not a "riding trail" under section 3-107(b) of the Act because it is paved and runs through a busy, developed commercial and industrial area of the city rather than a forest or mountainous region. Plaintiff attached her affidavit, in which she averred that she was familiar with the exact location on the path where the incident occurred, having ridden her bicycle through the

---

[2]Lake County's motion was uncontested, was not appealed, and is not at issue in these proceedings. The County is not a party to the appeal before this court.

area many times. She also attached photographs in support of her statements describing the path.

¶ 12    Plaintiff alleged the following facts. The path is not located in a wooded, natural scenic area. The path passes by a city park called Buckthorn Park. At the specific location where the accident occurred, there are commercial and industrial businesses, parking lots, and buildings abutting both sides of the path. Many of the businesses have cyclone fences that are adjacent to the path. Behind these fences are stacks of industrial materials such as pipes and cement blocks. There are some large bushes and grass but no trees present in the area where the incident occurred. Near the site of the accident, the path intersects with Old Deerfield Road, which is a busy city street with motor vehicles regularly crossing the path. As bicyclists approach the road from the north and south, there are stop signs for the bicyclists but no stop signs for the cars. The path is sandwiched between U.S. Route 41, which is less than one block to the east, and railroad tracks, which are less than one block to the west. There are large ComEd utility poles that run alongside the entire path, with multiple power lines overhead.

¶ 13    In its reply, the City did not dispute the facts averred by plaintiff. It argued, however, that the decisions of neighboring landowners to develop their property and the fact that the path is adjacent to a road did not defeat the immunity conferred by section 3-107(b) of the Act. The City argued that the nature of the path itself is determinative of whether it is a "riding trail" under section 3-107(b). The City contended that the undisputed evidence, *i.e.*, that the path is surrounded by grass, shrubs, hedges, and bushes, shows that it is a "riding trail" as contemplated by section 3-107(b).

¶ 14    The circuit court allowed both defendants' motions and granted summary judgment in favor of defendants. On appeal, plaintiff did not challenge the judgment for the County. She argued that the grant of summary judgment for the City was error because the path was not a "riding trail," as that term has been construed by the appellate court.

¶ 15    The appellate court reversed the circuit court's order granting summary judgment in favor of the City and remanded the case to the circuit court for further proceedings. 2016 IL App (2d) 160035, ¶¶ 33-34 (affirming in part and reversing in part the circuit court's judgment). The appellate court reviewed the relevant case law and found that the judicially accepted definition of the word "trail" is " 'a "marked path through a forest or mountainous region." ' " *Id.* ¶¶ 23, 29 (quoting *Brown v. Cook County Forest Preserve*, 284 Ill. App. 3d 1098, 1101 (1996), quoting Webster's Third New International Dictionary 2423 (1981)). The court concluded that the presence of industrial and residential development completely surrounding the path defeated the City's argument that it runs through a forest or mountainous region. 2016 IL App (2d) 160035, ¶¶ 29-30. Therefore, the immunity provided by section 3-107(b) did not apply. *Id.*

¶ 16    This court allowed the City's petition for leave to appeal pursuant to Illinois Supreme Court Rule 315. Ill. S. Ct. R. 315(a) (eff. Mar. 15, 2016). We also allowed the Park District Risk Management Agency to file a brief as *amicus curiae* in support of the City.

¶ 17                                ANALYSIS

¶ 18    This appeal requires us to review the circuit court's order granting summary judgment in favor of the City. Summary judgment is proper when the pleadings, depositions, affidavits, and other matters on file establish that there is no genuine issue of material fact and that the moving

party is entitled to judgment as a matter of law. 735 ILCS 5/2-1005(c) (West 2012). This court reviews the circuit court's summary judgment ruling *de novo*. *Bremer v. City of Rockford*, 2016 IL 119889, ¶ 20. Issues involving statutory interpretation are questions of law, which are also reviewed *de novo*. *Moon v. Rhode*, 2016 IL 119572, ¶ 22.

¶ 19     The circuit court granted summary judgment to the City on the basis that it is immune from liability for plaintiff's injuries under section 3-107(b) of the Act. Section 3-107 of the Act provides, in its entirety:

> "*Neither a local public entity nor a public employee is liable for an injury caused by a condition of:* (a) Any road which provides access to fishing, hunting, or primitive camping, recreational, or scenic areas and which is not a (1) city, town or village street, (2) county, state or federal highway or (3) a township or other road district highway. *(b) Any hiking, riding, fishing or hunting trail.*" (Emphases added.) 745 ILCS 10/3-107 (West 2012).

¶ 20     There is no question that, if section 3-107(b) applies, the City is completely immune from liability, even for willful and wanton conduct. See *DeSmet v. County of Rock Island*, 219 Ill. 2d 497, 514 (2006) (when the plain language of an immunity provision in the Act contains no exception for willful and wanton conduct, it means that the legislature intended to immunize both negligence and willful and wanton conduct). Furthermore, there is no dispute that plaintiff's injury was caused by a condition of the path. The parties disagree, however, as to whether the Skokie Valley Bike Path is a "trail" within the meaning of section 3-107(b). The statute itself does not provide a definition of the term.

¶ 21     Before addressing the meaning of the statutory language, we note that the Skokie Valley Bike Path is considered a "shared-use trail" by the Illinois Department of Transportation (IDOT). IDOT is the state agency responsible for officially designating bikeways throughout the state pursuant to the Bikeway Act. 605 ILCS 30/2 (West 2012). Manuals published by IDOT provide that a shared-use trail is physically separated from the roadway and intended for use by bicycles and other nonmotorized forms of transportation, including pedestrians, disabled persons in wheelchairs, and in-line skaters. See Illinois Department of Transportation, Bureau of Design and Environment Manual, 17-1.01 (2011); Illinois Department of Transportation, Bureau of Local Roads and Streets Manual, 42-1.01 (2013).

¶ 22     The Skokie Valley Bike Path, in particular, is a type of shared-use path called a "rail-with-trail" because it runs parallel to train tracks located about 40 feet to the west of the path. Skokie Valley Trail (Lake County) Illinois, *TrailLink by Rails-to-Trails Conservancy*, https://www.traillink.com/trail/skokie-valley-trail-(lake-county)/ (last visited Nov. 14, 2017). Running parallel to the path on the east side is U.S. Route 41. The path is approximately 10 miles long and paved with asphalt. It runs from the village of Lake Bluff at the northern end to the city of Highland Park at the southern end. *Id.* There are several major road crossings, which are marked and include crosswalks. The path has a yellow, painted line dividing it into two lanes and has signs with mile markers for users of the path. Because the path shares a right-of-way with ComEd, high-voltage electrical wires run overhead along the entire path. *Id.* The path connects to other shared-use paths, including the North Shore Bike Trail, the Des Plaines River Trail, and the Robert McClory Bike Path. *Id.*

¶ 23     The appellate court below concluded that the Skokie Valley Bike Path was not a "trail" within the meaning of section 3-107(b). In so holding, the appellate court relied on the

analytical framework adopted in a previous case, *Brown v. Cook County Forest Preserve*, 284 Ill. App. 3d 1098 (1996). In *Brown*, the court determined the meaning of the word "trail" in the statute by reference to a dictionary. The dictionary definition chosen by the court defined a "trail" as a " 'marked path through a forest or mountainous region.' " *Id.* at 1101 (quoting Webster's Third New International Dictionary 2423 (1981)). The *Brown* court held that, since the bicycle path at issue in that case ran through a forest or a "natural and scenic wooded area[ ]," it was a "riding trail" under section 3-107(b). *Id.* The fact that the path was paved did not alter the court's analysis since, according to the court, the only relevant characteristic of the path was that it traversed a forested area. *Id.*

¶ 24    The appellate court in this case used the same analytical framework as the *Brown* court, holding:

> "the case law that we follow does require that, to be within section 3-107(b), a path not only be used by bicyclists (or hikers or both) but be located within a ' "forest or mountainous region" ' [Citations.] As a matter of law, this restriction defeats the City's assertion that the path is a riding or hiking trail. No contention has been made that the path is located in a mountainous region (mountains being scarce in Lake County). No serious contention can be made that the path is located in a forest; no reasonable person who views the photographs of the path and its surroundings, or even reads their descriptions by those who have seen them, would describe those surroundings as a forest. The path is bordered by narrow bands of greenway that sport some shrubs and a few trees; these narrow bands are surrounded by industrial development, residential neighborhoods, parking lots, railroad tracks, and major vehicular thoroughfares (to the east *and* south of the area of the accident). The case for considering the path a riding trail would not succeed even if utility poles could be considered trees with power lines for branches." (Emphasis in original.) 2016 IL App (2d) 160035, ¶ 29.

Accordingly, under the appellate court's approach, the application of the statute and the existence of blanket immunity turn on whether the trail runs through a forest or "natural and scenic wooded area."

¶ 25    Without expressing any view on the correctness of the result in the *Brown* case, we believe the analytical framework adopted by that court was misguided. First, when using a dictionary to help determine statutory meaning, it is appropriate to use one in existence at the time of the statute's enactment. See *Sayles v. Thompson*, 99 Ill. 2d 122, 125 (1983) ("[t]he meaning of a statute or constitutional provision depends upon the intent of the drafters *at the time of its adoption*, and it is a long-standing principle of statutory construction that it is the court's duty to ascertain and effectuate that intent" (emphasis added)). The *Brown* court used a definition from a dictionary published in 1981, well after section 3-107(b) was enacted in 1965.

¶ 26    Second, *Brown* misquoted the definition of the word "trail" in the dictionary it cited. The entire definition is "a blazed or otherwise marked path through a forest or mountainous region." Webster's Third New International Dictionary 2423 (1981). From the same dictionary, the word "blaze" means "a mark made on a tree usu. by chipping off a piece of the bark." *Id.* at 232. To "blaze" a trail means to "to mark out (as a path) by making blazes on trees." *Id.* Thus, a "blazed or otherwise marked path" is one made by chipping pieces out of trees. In other words, the definition used by *Brown* has nothing to do with shared-use trails or designated bicycle paths.

¶ 27    Third, and most importantly, the appellate court in *Brown* erred in viewing the word "trail" outside the context of the statute in order to determine its meaning. It is a "fundamental principle of statutory construction (and, indeed, of language itself) that the meaning of a word cannot be determined in isolation, but must be drawn from the context in which it is used. [Citations.]" *Deal v. United States*, 508 U.S. 129, 132 (1993). "The terms in a statute are not to be considered in a vacuum." *M.I.G. Investments, Inc. v. Environmental Protection Agency*, 122 Ill. 2d 392, 400 (1988). Rather, the words and phrases in a statute must be construed in light of the statute as a whole, " 'with each provision construed in connection with every other section.' " *Eden Retirement Center, Inc. v. Department of Revenue*, 213 Ill. 2d 273, 291 (2004) (quoting *Paris v. Feder*, 179 Ill. 2d 173, 177 (1997)); 2A Norman Singer & Shambie Singer, Sutherland Statutes and Statutory Construction § 46:5 (7th ed. 2007).

¶ 28    Instead of considering the meaning of the word "trail" in the context of the statute as a whole, the *Brown* court isolated the word from the statute and assigned to it a definition from a dictionary. But dissecting an individual word or phrase from a statutory provision and mechanically applying to it a dictionary definition is clearly not the best way of ascertaining legislative intent. See *Whelan v. County Officers' Electoral Board*, 256 Ill. App. 3d 555, 558 (1994). As Judge Learned Hand observed:

> "Of course it is true that the words used, even in their literal sense, are the primary, and ordinarily the most reliable, source of interpreting the meaning of any writing: be it a statute, a contract, or anything else. But it is one of the surest indexes of a mature and developed jurisprudence not to make a fortress out of the dictionary; but to remember that statutes always have some purpose or object to accomplish, whose sympathetic and imaginative discovery is the surest guide to their meaning." *Cabell v. Markham*, 148 F.2d 737, 739 (2d Cir. 1945).

¶ 29    The appellate court's decision to define the word "trail" using a general dictionary definition of the term distorts the meaning of the statute by divorcing the term from its context. Under the appellate court's rationale, a governmental entity is immune from liability for conditions on a trail only if there is sufficient foliage or a certain number of trees surrounding the trail to constitute a "forest" or "scenic wooded area." This analysis is both subjective and arbitrary and has nothing to do with whether a governmental entity should be held liable for creating a risk of injury to users of a trail. Nevertheless, although we disagree with the appellate court's analysis, we agree that section 3-107(b) is not intended to apply to a bicycle path like the one in the present case.

¶ 30    In construing a statute, our primary objective is to ascertain and give effect to the legislature's intent. *People v. Gutman*, 2011 IL 110338, ¶ 12. The best indicator of that intent is the statutory language, given its plain and ordinary meaning. *Id.* As we have stated, unless a word in a statutory sentence is defined in the statute, it must be read in context in order to determine its meaning. Accordingly, a word such as "trail" in section 3-107(b) "must be read in the context of the entire sentence in which it appears." *Skolnick v. Altheimer & Gray*, 191 Ill. 2d 214, 229 (2000).

¶ 31    Section 3-107(b) does not state that immunity applies to an injury caused by a condition of "any riding trail." Rather, it provides that immunity applies to an injury caused by a condition of "[a]ny hiking, riding, fishing or hunting trail." 745 ILCS 10/3-107(b) (West 2012). When construing a series of terms such as the ones in section 3-107(b), we are guided by the

- 7 -

commonsense principle "that words grouped in a list should be given related meaning." *Third National Bank in Nashville v. Impac Ltd.*, 432 U.S. 312, 322 (1977). This principle is related to the canon of statutory construction known as *noscitur a sociis*, *i.e.*, " 'a word is known by the company it keeps.' " *People v. Gaytan*, 2015 IL 116223, ¶ 30 (quoting *Jarecki v. G.D. Searle & Co.*, 367 U.S. 303, 307 (1961)). In other words, "a word is given more precise content by the neighboring words with which it is associated." *United States v. Williams*, 553 U.S. 285, 294 (2008).

¶ 32    The canon of *noscitur a sociis* is particularly useful when construing one term in a list, in order "to avoid ascribing to one word a meaning so broad that it is inconsistent with its accompanying words, thus giving 'unintended breadth to [legislative acts].' " *Gustafson v. Alloyd Co.*, 513 U.S. 561, 575 (1995) (quoting *Jarecki*, 367 U.S. at 307). For example, in *Gustafson*, the United States Supreme Court "interpreted the word 'communication' in § 2(10) of the Securities Act of 1933 [(48 Stat. 74 (1933) (codified as amended at 15 U.S.C. § 77b(a)(10)))] to refer to a public communication, rather than any communication, because the word appeared in a list with other words, notably 'notice, circular, [and] advertisement,' making it 'apparent that the list refer[red] to documents of wide dissemination.' " *Yates v. United States*, 574 U.S. ___, ___, 135 S. Ct. 1074, 1085 (2015) (quoting *Gustafson*, 513 U.S. at 575-76). "And [the Court] did so even though the list began with the word 'any.' " *Id.* at ___, 135 S. Ct. at 1085.

¶ 33    Utilizing these principles of statutory interpretation, we reject the City's argument that the Skokie Valley Bike Path is obviously a "trail" as that word is ordinarily and popularly used. According to the City, the numerous references in the record describing the path as a "trail" are compelling evidence that the path is a "riding trail" as set forth in section 3-107(b). The City engages in the same flawed analysis as the appellate court, however, removing the word "trail" from the context of the statute and assigning to it a broad, general definition. Reading the text as a whole, we find that the words "hiking," "fishing," and "hunting" dictate a narrower construction of the term "trail." If section 3-107(b) stated that immunity applied to "any jogging, riding, in-line skating, or stroller trail," then it would be easy to find that a shared-use path such as the Skokie Valley Bike Path is a "riding trail." However, the inclusion of the words "hiking," "fishing," and "hunting" in the same sentence as "riding" indicates that the legislature intended to apply blanket immunity only to primitive, rustic, or unimproved trails. The word "hunting," in particular, leads us to this conclusion. A trail that leads to a deer blind or other hunting spot will likely be minimal, to avoid disturbing the game. There is no reasonable way that a hunting trail can be associated with or given a related meaning to the type of shared-use path at issue here.

¶ 34    Further support for our interpretation of the statutory language in section 3-107(b) is found when we compare it with the language in section 3-107(a). Under the doctrine of *in pari materia*, two sections of the same statute "will be considered with reference to each other, 'so that they may be given harmonious effect.' " *Collinsville Community Unit School District No. 10 v. Regional Board of School Trustees*, 218 Ill. 2d 175, 185 (2006) (quoting *Land v. Board of Education of the City of Chicago*, 202 Ill. 2d 414, 422 (2002)). Section 3-107(a) grants immunity from liability for an injury caused by a condition of: "(a) Any road which provides access to fishing, hunting, or primitive camping, recreational, or scenic areas and which is not a (1) city, town or village street, (2) county, state or federal highway or (3) a township or other road district highway." 745 ILCS 10/3-107(a) (West 2012). The reference in

section 3-107(a) to roads that provide access to "primitive" areas, rather than official streets, suggests that the legislature intended section 3-107 of the Act to apply to primitive, unfinished trails and roads. See *Goodwin v. Carbondale Park District*, 268 Ill. App. 3d 489, 493 (1994) ("Reading section 3-107 as a whole indicates that the property referred to therein is unimproved property which is not maintained by the local governmental body and which is in its natural condition with obvious hazards as a result of that natural condition.").

¶ 35    In addition, the City's interpretation of the statute leads to anomalous results when applied to a bicycle path located in a recreational area such as a public park. In construing statutory language, we may consider the consequences that would result in interpreting the statute one way or the other. *County of Du Page v. Illinois Labor Relations Board*, 231 Ill. 2d 593, 604 (2008). We also presume that the legislature did not intend absurdity, inconvenience, or injustice. *Brucker v. Mercola*, 227 Ill. 2d 502, 514 (2007). Many shared-use paths run through public parks and other recreational areas. Under section 3-106 of the Act, injuries occurring due to a condition of recreational land are subject to immunity only for negligent conduct and not for willful and wanton conduct. See *Moore v. Chicago Park District*, 2012 IL 112788, ¶ 10. Section 3-106 of the Act provides:

> "Neither a local public entity nor a public employee is liable for an injury where the liability is based on the existence of a condition of any public property intended or permitted to be used for recreational purposes, including but not limited to parks, playgrounds, open areas, buildings or other enclosed recreational facilities, unless such local entity or public employee is guilty of willful and wanton conduct proximately causing such injury." 745 ILCS 10/3-106 (West 2012).

If a bicycle path winding through a public park were subject to blanket immunity under section 3-107(b), a pedestrian would be barred from suing for an injury caused by a condition of the path, while being able to sue for the exact same injury occurring on park grounds next to the path. This inconsistent treatment can be avoided, however, by construing the Act so that a shared-use trail in a public park or recreational area is subject to section 3-106 of the Act rather than section 3-107(b).

¶ 36    The City also contends that construing the statute broadly to grant blanket immunity for all bicycle paths would promote the public policy underlying the statute. According to the City, the public policy behind section 3-107(b) is to promote the expenditure of public funds for the purpose of creating greater access to riding trails, rather than to divert those funds to pay damage claims stemming from the condition of those trails. *Cf. Moore*, 2012 IL 112788, ¶ 22 (discussing the public policy rationale for section 3-106 of the Act). But public policy also points the other way. After all, it seems strange to say that a local public entity can build and maintain a bike trail, encourage people to use it, and represent that it is safe but then escape all liability for injuries caused by even the most egregious misconduct in failing to maintain it.

¶ 37    At the same time, it makes sense to apply blanket immunity to undeveloped, unimproved trails that are left in their natural state as a feature of those trails. Requiring public entities to maintain such trails "would defeat the very purpose of these types of recreational areas, that is, the enjoyment of activities in a truly natural setting." *Goodwin*, 268 Ill. App. 3d at 493. A law review article published shortly after section 3-107 was enacted makes a similar point:

> "There is at least one situation in which it may be undesirable to require a public entity to maintain its land in safe condition, and that is as to those lands set aside for

hiking, camping, fishing, and hunting. The users of these lands desire to have the property maintained in its natural condition. To maintain this land in a reasonably safe condition would, to some degree, defeat the purpose for which such lands have been provided." Comment, *Illinois Tort Claims Act: A New Approach to Municipal Tort Immunity in Illinois*, 61 Nw. U. L. Rev. 265, 287 n.102 (1966).

Because there are legitimate policy reasons for giving the statute a narrow application, the policy reasons offered by the City cannot overcome the language of the statute. Furthermore, the Act is in derogation of the common law and must be strictly construed against the governmental entity claiming immunity. *Van Meter v. Darien Park District*, 207 Ill. 2d 359, 368 (2003).

¶ 38    The City makes an additional argument that the definition of a "recreational trail" in section 10 of the Recreational Trails of Illinois Act (20 ILCS 862/10 (West 2012)) should be read into section 3-107(b) of the Tort Immunity Act. *Id.* (defining a "recreational trail," in part, as "a thoroughfare or track across land or snow"). We reject this argument. The two statutes have different purposes and different contexts, and it is inappropriate to import the definition of the term "trail" from one statute to another, since "the context in which a term is used obviously bears upon its intended meaning." *People ex rel. Illinois Department of Labor v. E.R.H. Enterprises, Inc.*, 2013 IL 115106, ¶ 29.

¶ 39    Accordingly, we hold that section 3-107(b) of the Act was intended to apply only to primitive or rustic trails. These include any designated hiking, riding, fishing, or hunting trail that retains its original, natural surface and is not improved with asphalt, concrete, crushed aggregate, or similar finishes and is not intended for ordinary "on-road" type bicycles, bicyclists pulling children in trailers, pedestrians pushing strollers, or similar forms of transportation. The Skokie Valley Bike Path is a 10-mile-long, shared-use path, paved with asphalt and held out for the use of bicycles, pedestrians, and in-line skaters. It is not a "trail" within the meaning of the statute as this court has interpreted the term. Thus, section 3-107(b) does not apply in this case, and summary judgment for the City was improper.

¶ 40    As a final matter, in light of our holding that immunity under section 3-107(b) is inapplicable to the allegations in plaintiff's complaint, we need not address plaintiff's alternative argument that the City waived its tort immunity defense through its maintenance agreement with the County.

¶ 41                                    CONCLUSION

¶ 42    For the foregoing reasons, we find that the circuit court's order entering summary judgment in favor of the City was in error. We thus affirm the appellate court's judgment. The matter is remanded to the circuit court for proceedings consistent with this opinion.

¶ 43    Appellate court judgment affirmed.

¶ 44    Circuit court judgment reversed.

¶ 45    Cause remanded.